**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,**

**v.**

**BOARD OF TRUSTEES OF WAYNE COUNTY COMMUNITY COLLEGE, Defendant-Appellee.**

No. 82–1741.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 28, 1983.

Decided Dec. 21, 1983.

Warren Duplinsky, argued and Marcia B. Ruskin, Washington, D.C., Charlie C. Taylor, Librado Gayton, Detroit, Mich., for plaintiff-appellant.

Leonard D. Givens, Miller, Canfield, Paddock & Stone, Thomas Hustoles (argued), Detroit, Mich., for defendant-appellee.

Before MERRITT and JONES, Circuit Judges, HOLSCHUH,* District Judge.

MERRITT, Circuit Judge.

The defendant is a publicly elected college governing board. In this appeal of the District Court's dismissal of plaintiff's age discrimination action against the board, the issue is whether the position of president of Wayne County Community College falls within the exemption for "policymakers" set forth in section 11(f) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 630(f) (1976).[1] We conclude that

---

\* The Honorable John D. Holschuh, Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

1. Employees covered by the Act are defined in § 11(f):

The term "employee" means an individual employed by any employer except that the

term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, *or an appointee on the policymaking level* or an immediate adviser with respect to the exercise of the constitutional or legal

the position of president does fall within that exemption and therefore affirm the District Court's judgment.

## I.

Richard Simmons, Jr. was appointed by the Board of Trustees of Wayne County Community College to a three-year term as president on December 28, 1980. He was subsequently removed from that position by the Board on June 27, 1982. He then filed a charge with the Equal Employment Opportunity Commission (EEOC) and the Michigan Department of Civil Rights, alleging that the Board of Trustees had discriminated against him on the basis of his age.

The EEOC sought a temporary restraining order and preliminary injunction to prohibit the Board of Trustees from discharging Simmons. In addition, the EEOC filed a complaint alleging that the Board's actions constituted age discrimination in violation of section 4(a) of the Age Discrimination in Employment Act, 28 U.S.C. § 623(a) (1976).

The Board of Trustees moved to dismiss the EEOC's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, on grounds that the EEOC lacked subject matter jurisdiction of Mr. Simmons' charge of discrimination because the Age Discrimination in Employment Act specifically exempts policymaking, appointed officials from its coverage. After oral argument the District Court found that 29 U.S.C. § 630(f) does contain an exemption for the position of president of a Michigan community college. The EEOC appeals from the District Judge's dismissal of its action.

## II.

The Age Discrimination in Employment Act "prohibit[s] arbitrary age discrimina-

tion in employment." *Id.* § 621. The Act expressly excepts elected public officials, persons appointed by an elected official to his or her personal staff, and persons appointed to the policymaking level or as immediate advisers with respect to the exercise of the constitutional or legal powers of the office. *Id.* § 630(f).[2] Persons whose positions lie within these parameters are not protected by the Act's prohibitions.

The term "policymaking level" is not expressly defined in the Act or in its legislative history. The EEOC argues that the District Court erred in finding that the president of Wayne County Community College was on a "policymaking level" under the Act. Even construing the policymaking exemption narrowly, however, we conclude that the position of president of Wayne County Community College is on a "policymaking level," and therefore falls within that exemption to the Age Discrimination in Employment Act.

The president is the highest appointed official in the Wayne County Community College District, a political subdivision of the state of Michigan. Even the EEOC analogizes the president's position and function to that of a chief executive officer of a company. The Board of Trustees has defined his role in the broadest of terms:

> Under the general direction, and within the authority framework delegated by the Board of Trustees, [the president] executes policies, formulates plans and programs for and directs [the] administration of the College. [The president also] [p]romotes a favorable community environment for the operation of the College and provides broad leadership in attaining the College mission.

Wayne County Community College Job Description, Joint App. at 96.[3] It is manifest

---

powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.

29 U.S.C. § 630(f) (emphasis added).

**2.** See *supra* note 1.

**3.** Furthermore, the responsibilities and duties of the President require that he

1. Recommends to the Board of Trustees policy for planning and initiating organizational, academic and budgetary functions.
2. Administers fiscal and physical planning activities.
3. Meets with governmental, business, community and civic leadership groups to pro-

that the president has a significant role in the policymaking of the college, and that he is more than a mere administrator with some measure of discretionary power.

In support of its contention that the Wayne County Community College president does not function on the "policymaking level," the EEOC argues that under Michigan law, the policies of the community colleges are to be determined solely by the Board of Trustees of a particular college. The EEOC's analysis is grounded on an overly broad construction of the statute and its meaning, however. It is true that, under the Michigan Community College Act of 1966, Mich.Comp.Laws §§ 389.1—.195 (1970), the Boards of Trustees have broad authority to direct and govern the community colleges. *See, e.g., id.* § 389.121 (trustees have power "to make plans for, to promote, or acquire, construct, own, develop, maintain and operate" community college). Nevertheless, policymaking is not a zero-sum game. The exercise by the board of extensive policymaking power does not preclude, and in fact is complementary to, the concurrent exercise of wide-ranging policymaking authority by the president as the highest appointed official of the college. The fact that there exist some decisions that the president cannot, or would not choose, to make alone, does not diminish the very significant policymaking power that he possesses. The EEOC's argument to the contrary is tantamount to saying that because the chief executive officer of a company must obtain the approval of the board of directors before proceeding with some policies that he has determined are in the company's best interests, he is not a policy-maker. Such an analysis is disingenuous and plainly wrong.

As a further twist on this line of analysis, the EEOC cites a recent Opinion of the Michigan Attorney General for the proposition that the Board of Trustees cannot legally delegate its powers to make policy affecting the college, and therefore cannot appoint a person to a "policymaking level" as that term is used in the Age Discrimination in Employment Act. Again, the EEOC's interpretation is wide of the mark, in part because it fails to take account of the limited nature of the Attorney General's inquiry.

The Opinion was confined to consideration of the following question:

> May the board of trustees of a community college delegate to the president or other officers of the community college the power to hire and discharge employees, make major purchases, enter into construction contracts, make leases and execute deeds?

Op. Att'y Gen. 5843 (1981), Joint App. at 108. The activities about which the Attorney General was asked to express his opinion are specifically identified in Michigan law as powers reserved to the Board of Trustees. *See* Mich.Comp.Laws §§ 389.-124(a) & (b) (board has power to "contract with, appoint, and employ" administrator and other teachers and employees); *id.* § 389.121(a) (board acquires, constructs, leases and maintains all facilities); *id.* § 389.127 (board may borrow money or issue notes or obligations). These responsibilities have never been at issue. It simply does not follow from the statutory carving out of these areas as the ultimate responsi-

---

mote educational programs and the public service objectives and policies of the College.
4. Establishes operational procedures, rules and standards and monitors compliance with them.
5. Provides direction to the development of educational programs relevant to the needs of the service district.
6. Recommends new policies to the Board of Trustees and implements policies adopted by the Board.
7. Represents the College at formal functions.

8. Promotes the development of College staff and resources.
9. Supervises Executive Committee and evaluates periodically.
10. Assists and facilitates internal administrative cohesiveness, cooperation and complementary support.
11. Confers with staff and students and assists in the development of harmonious ongoing college relations.
12. [Serves as the] Chief representative of the College to the State Legislature.
*Id.,* Joint App. at 96–97.

bility of the Board of Trustees, that the community college president must therefore lack policymaking authority in these and other areas. The EEOC's "legal impossibility" argument apparently assumes that there can be only one policymaker in an institution. Such analysis must fail because surely shared, overlapping, and complementary authority are no less capable of being denominated as policymaking than is exclusive authority.

Accordingly, the judgment of the District Court is affirmed.