**Hyman ROSENFELD, Appellant,**

v.

**DEPARTMENT OF the ARMY, Agency, U.S. Army, Aberdeen, Maryland, Appellee.**

**No. 84–1872.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1985.

Decided Aug. 14, 1985.

he would not have been allowed to return to Canada.

Sheldon H. Laskin, Ellicott City, Md. (Charles T. Vekert, Rupli, Vekert & Laskin, Ellicott City, Md., on brief) for appellant.

John Paul Woodley, Jr., Captain, Judge Advocate General's Corps, Washington, D.C. (J. Frederick Motz, U.S. Atty., Larry A. Ceppos, Asst. U.S. Atty., Baltimore, Md., Peter B. Loewenberg, Chief, Civilian Personnel Litigation Office of the Judge Advocate Gen., Washington, D.C., on brief) for appellee.

Before WINTER, Chief Judge, and SPROUSE and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

The sole issue presented in this appeal is whether a determination by the Civil Service Commission that a federal employee is disabled should be granted collateral estoppel effect in a subsequent action brought by the employee to challenge his involuntary retirement under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1982). We hold that 5 U.S.C. § 8347(c) (1982), limiting the reviewability of administrative disability findings on direct appeal, does not prevent a *de novo* judicial resolution of the reason for plaintiff's involuntary retirement in a later ADEA suit. Adhering to the presumption against finality of administrative decisions in discrimination actions where there has been no prior judicial review, we reverse the district court's summary judgment for defendant.

I

Plaintiff Hyman Rosenfeld is a sixty-four year old former civil service employee of the United States Army who served as a maintenance mechanic at Aberdeen Proving Ground, Maryland from 1942 to 1978. Due to growing tension with his immediate supervisor, Rosenfeld requested a lateral transfer in 1975, which the Army denied, apparently because of Rosenfeld's age. Rosenfeld thereupon filed an age discrimination complaint with the Director of Equal Employment Opportunity for the Department of the Army. The Director, in a February 24, 1977 decision, found reasonable cause to believe that age discrimination had occurred, and ordered the Army to give Rosenfeld priority consideration for the next available position for which he was qualified.

Between the time that Rosenfeld filed his age discrimination complaint in 1976 and the Director rendered his final decision, plaintiff's supervisors repeatedly suggested in memoranda to management that Rosenfeld be involuntarily retired on grounds of mental disability. The Army ordered Rosenfeld to undergo a fitness for duty examination, the need for which he contested. The examining psychiatrist concluded on March 7, 1977 that Rosenfeld was suffering from latent schizophrenia and was unable to work in his current setting. As a result, the Army placed Rosenfeld on involuntary sick leave in June 1977 and the Director's February 1977 order was held in abeyance.

Prompted by the psychiatrist's report, the Army initiated administrative proceedings in 1977 aimed at forcing Rosenfeld to retire. Upon the Army's application, the Civil Service Commission's Bureau of Retirement Insurance and Occupational Health issued an order on September 6, 1977, specifying that Rosenfeld be retired involuntarily because he suffered from a mental disability. Rosenfeld appealed unsuccessfully to the Federal Employee Appeal Authority, which sustained the Commission's order on December 14, 1978, and finally to the Appeal Review Board, which rejected his appeal on July 5, 1979.

As Rosenfeld was contesting the involuntary retirement order through the administrative process, he was also filing further age discrimination complaints, which were rejected on the merits by the Director in 1979, and by the Equal Employment Opportunity Commission in 1982. Rosenfeld thereafter brought this ADEA suit in 1982, complaining that he had been denied the requested transfer and involuntarily retired because of his age or in reprisal for his 1976 discrimination charge, and seeking injunctive relief, reinstatement and back pay and benefits.[1] The district court granted defendant's motion for summary judgment, finding that it had been conclusively determined by the Civil Service Commission that Rosenfeld was mentally disabled when the alleged discrimination occurred, and that accordingly plaintiff could not establish a prima facie case of age discrimination because he could not prove that he was qualified for employment. Relying upon 5 U.S.C. § 8347(c), the district court ruled that Congress had precluded judicial review of the Commission's finding of mental disability.

## II

■ Federal anti-discrimination statutes embody a strong presumption in favor of judicial resolution of disputed questions of fact. Prior administrative findings, whatever result may be reached, are ordinarily not entitled to preclusive effect in a subsequent discrimination suit, even though the same facts are in dispute. Whether the prior administrative findings be those of the Civil Service Commission, the EEOC, or any other federal agency is immaterial. The plain lesson of *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), is that Congress entrusted the ultimate resolution of questions of discrimination to the federal judiciary.

In *Alexander*, the Court unanimously held that a private employee's right to a *de novo* review of his racial discrimination claim under Title VII was not precluded by prior submission of the same claim to final, binding arbitration under the nondiscrimination clause of a collective bargaining agreement. The Court recognized that Congress had intended to "accord parallel or overlapping remedies against discrimination," and that "Title VII provides for consideration of employment-discrimination claims in several forums." 415 U.S. at 47, 94 S.Ct. at 1019. Accordingly, "submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Id.* at 47–48, 94 S.Ct. at 1019. In refusing to bar relitigation of the factual question of discrimination, *Alexander* noted that "[t]he policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of *res judicata* and collateral estoppel." *Id.* at 49 n. 10, 94 S.Ct. at 1020 n. 10. No deference to arbitral procedures was due, for "the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by

---

1. Rosenfeld has now been rehired by the Department of the Army, mooting any question of reinstatement. Entitlement to back pay and benefits, however, remains in dispute.

reference to public law concepts." *Id.* at 57, 94 S.Ct. at 1024.

The Court extended *Alexander* in *Chandler v. Roudebush,* unanimously holding that under the 1972 amendments to Title VII, federal employees had the same right to a *de novo* judicial review of their employment discrimination claims as did private sector employees. 425 U.S. at 848, 96 S.Ct. at 1953. In *Chandler,* the Civil Service Commission had rejected the plaintiff's sex and race discrimination claims on the merits, and the plaintiff thereafter brought a Title VII action in district court upon the same facts. The Court upheld the right to a *de novo* hearing, declaring that the legislative history of the 1972 amendments manifested "a thorough and meticulous consideration of the question whether an administrative agency or a court should be given primary adjudicative responsibility for particular categories of Title VII complaints and an unambiguous choice to grant federal employees the right to plenary trials in the federal district courts." *Id.* at 853–54, 96 S.Ct. at 1956.

The holding in *Chandler,* permitting relitigation of the factual question of discrimination in federal court notwithstanding prior rejection of the identical claim by the Civil Service Commission, necessarily repudiates any *res judicata* or collateral estoppel effect for administrative findings. This fundamental principle, while enunciated in the Title VII context, is no less relevant to the ADEA. "[T]he similarities between the two Acts in their provisions respecting federal employees are such as to completely outweigh the differences, and compel the construction that the civil action provided by both Acts be of the same character." *Nabors v. United States,* 568 F.2d 657, 659 (9th Cir.1978). Both the ADEA and Title VII, until 1979, authorized the Civil Service Commission to enforce their respective prohibitions of discrimination in federal employment,[2] 29 U.S.C. § 633a(b) (1976); 42

U.S.C. § 2000e–16(b) (1976). It would be unreasonable to suppose that Congress intended Commission determinations of fact to be preclusive under the ADEA while enacting a different standard for Title VII. *Nabors,* 568 F.2d at 659. The 1974 amendment to the ADEA bringing federal employees within the statute's protections followed Congress's amendments extending Title VII's coverage to federal employees. "The similarity of the two Acts in form and substance strongly suggests that Congress ... intended ... that federal and private employees should both enjoy *de novo* civil actions under both Acts." *Id.* at 660. We thus conclude that the principles of *Alexander* and *Chandler,* refusing any preclusive effect to prior administrative determinations of fact in a subsequent Title VII action, apply with equal force under the ADEA.

 Congress can, of course, override the general statutory presumption against administrative preclusion in discrimination cases. Ordinarily *res judicata* and collateral estoppel may be invoked where "an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) (government contracts). This settled rule of administrative *res judicata,* however, is inapplicable where legislative policy favors an independent determination of the issue in question in another tribunal. Restatement (Second) of Judgments § 83(4)(b) (1982). The anti-discrimination statutes present the best example of such a policy. *See* 4 K. Davis, Administrative Law Treatise at 62 (2d ed. 1983).

The Supreme Court has found only one important exception to the presumption against administrative collateral estoppel in

---

**2.** All functions of the Civil Service Commission in enforcing the ADEA and Title VII in federal employment were transferred to the Equal Employment Opportunity Commission effective January 1, 1979 by Reorg.Plan No. 1 of 1978,

§§ 2, 3, 43 Fed.Reg. 19807 (1978), *reprinted in* 42 U.S.C. at 1455 (Supp. II 1978) *and in* 92 Stat. 3781 (1978), as provided by Exec.Order No. 12106, § 1–101, 44 Fed.Reg. 1053 (1978), *reprinted in* 42 U.S.C. at 1458 (Supp. II 1978).

antidiscrimination statutes. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), interpreted the full faith and credit requirement of 28 U.S.C. § 1738 (1982) to allow administrative disposition of an employment discrimination claim preclusive effect when the administrative ruling had been affirmed by a state court. Distinguishing judicial decisions from administrative ones, the Court noted that unreviewed administrative determinations by state agencies did not preclude a *de novo* review of a discrimination claim in federal court "even if such a decision were to be afforded preclusive effect in a State's own courts." 456 U.S. at 469–70 & n. 7, 102 S.Ct. at 1891 & n. 7. Here the *Kremer* exception is inapplicable, for respect for state court judgments is not in issue and the Commission's disability finding has had no prior judicial review of any kind.[3]

## III

■ Defendant here asks us to recognize another statutory exception to the rule of judicial resolution of discrimination questions. This we refuse to do.

Defendant contends that plaintiff may not relitigate the reason for his involuntary retirement because of the Commission's mental disability finding and the restriction on judicial review in of 5 U.S.C. § 8347(c). This statute, at the time of the Commission's decision in 1977, provided in relevant part:

The Commission shall determine questions of disability and dependency arising under this subchapter [Civil Service Retirement]. The decisions of the Commission concerning these matters are final and conclusive and are not subject to review.

5 U.S.C. § 8347(c) (1976).[4] Congress, aware of administrative abuses, amended this section in 1980 to allow judicial review of involuntary disability retirement decisions based on an individual's mental condition, pursuant to 5 U.S.C. § 7703. 5 U.S.C. § 8347(d)(2) (1982).[5] The amendment, which would have covered Rosenfeld's case, only applied, however, to administrative decisions made on or after January 1, 1981, Pub.L. No. 96–500, § 1(b), 94 Stat. 2696 (1980), and thus afforded Rosenfeld no direct appeal.

Until recently, this circuit held that the federal courts lacked jurisdiction under § 8347(c) to hear appeals in federal employee disability retirement cases. Administrative decisions were "final and conclusive," and "not subject to review," unless the case involved an involuntary retirement based on mental condition within the § 8347(d)(2) exception. *Chase v. Director, Office of Personnel Management*, 695 F.2d 790, 791 (4th Cir.1982). The Supreme Court has now adopted a contrary reading of the statutory language in *Lindahl v. Office of Personnel Management*, — U.S. ——, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), holding that "while the factual underpinnings of § 8347 disability determinations

---

3. Had judicial review of the Commission's decision been available, and the disability determination been affirmed on the merits by a federal court, a different question would be presented. *Alexander* and *Chandler* involved administrative preclusion, not a prior judicial determination.

4. Congress amended § 8347(c) in 1978, transferring the functions of the Commission in determining disability and dependency questions to the Office of Personnel Management. Pub.L. No. 95–454, § 906(a)(3), 92 Stat. 1224 (1978). *See* 5 U.S.C. § 8347(c) (Supp. II 1978).

 As then written, the statute spoke only of an appeal from an administrative order to the Commission itself. 5 U.S.C. § 8347(d) (1976). The 1978 amendment substituted a right of administrative appeal to the Merit Systems Protec-

tion Board. Pub.L. No. 95–454, § 906(a)(9), 92 Stat. 1224, 1225 (1978). *See* 5 U.S.C. § 8347(d) (Supp. II 1978).

5. Congress, as the legislative history of the 1980 amendment demonstrated, knew of abuses stemming from the limitation on judicial review, and considered judicial oversight necessary for involuntary agency-initiated disability retirements based on mental competency. "Allegations of increased use of such procedures to force unproductive or otherwise problem employees out of active service are considered to be serious by the [Senate Committee on Government Affairs] and increased protection of employee rights is needed." S.Rep. No. 1004, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5986, 5987.

may not be judicially reviewed, such review is available to determine whether 'there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error "going to the heart of the administrative determination." ' " 105 S.Ct. at 1633, *quoting Scroggins v. United States,* 184 Ct.Cl. 530, 534, 397 F.2d 295, 297, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968). Review under the *Scroggins* standard, for all types of disability claims authorized by *Lindahl,* is confined to legal and procedural errors, 105 S.Ct. at 1628, and is thus narrower than review of involuntary disability retirement for mental condition under § 8347(d)(2), which also permits, *inter alia,* factual examination for lack of substantial evidence. *Id. See* 5 U.S.C. § 7703(c)(3) (1982). Nonetheless, *Lindahl* explicitly repudiates the strict interpretation of § 8347(c)'s "final and conclusive" phrasing, preferring judicial review of administrative action unless there exists " 'clear and convincing evidence' of a contrary legislative intent." 105 S.Ct. at 1627, *quoting Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

Unlike previous cases interpreting § 8347(c), we deal not with direct judicial review of the Commission's decision, in which a purely factual disability determination could not be relitigated, but with a novel attempt to invoke § 8347(c) to collaterally preclude litigation of a discrimination action under the wholly distinct Age Discrimination in Employment Act. While most such administrative determinations are not presumptively open to collateral attack, there is a general presumption that Congress intended employment discrimination claims to be resolved by the courts, and contrary legislative intent to preclude collateral review is lacking. The very language of the statute is ambiguous, so far as collateral estoppel is concerned, for § 8347(c) applies only to "questions of disability ... arising under this subchapter,"

and only decisions "concerning these matters" are not subject to judicial review. Whether Rosenfeld was qualified for employment in 1977, and therefore able to establish a prima facie case of age discrimination for ADEA purposes, is not a question arising directly under the Civil Service Retirement statute.

Congress specifically provided in 1978 that when a federal employee seeks direct judicial review of a Title VII or ADEA discrimination claim, following an adverse administrative decision, "the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court," 5 U.S.C. § 7703(c) (1982), thus demonstrating its awareness and approval of the *Chandler* rule. Congress has never expressed any desire to give § 8347(c) collateral effect in light of *Chandler;* the only relevant amendment has expanded the right of direct review for involuntary mental disability determinations in precisely the sort of situation before us. Having allowed a federal employee to raise the crucial issue of discrimination twice, before an agency and in federal court, we can hardly assume that Congress was willing to permit the same discrimination claim to be barred without even a single judicial hearing, owing to an administrative finding of fact in an unrelated proceeding which has never been judicially reviewed in any respect.[6]

Title VII and the ADEA seek to combat employment discrimination, a significant public goal for which the courts have been accorded primary enforcement responsibility. Section 8347(c) serves no purpose of comparable import. Its function is simplification of the procedures for resolving entitlement to disability retirement and a civil service annuity. Nor are there, unlike *Kremer,* considerations of federalism or the "historic respect that federal courts accord state court judgments," 456 U.S. at 471–72, 102 S.Ct. at 1892, for the prior

---

**6.** Plaintiff, of course, had no opportunity to present his discrimination claim in the Commission's involuntary retirement proceedings, which were confined to the question of his mental disability, having been initiated under 5 U.S.C. § 8337(a) (1976).

decision in question lies squarely within the federal government.

In sum, we can find no indication that Congress intended § 8347(c) to have collateral estoppel consequences in employment discrimination actions, or considered this statute an exception to the strong presumption favoring *de novo* judicial resolution of controverted factual matters under Title VII and the ADEA.

## IV

We express no opinion on the merits of Rosenfeld's action. The principle we adopt is a neutral one, favoring neither federal employees nor their employers. Just as an employee is not prevented from litigating the issue of discrimination notwithstanding a prior disability finding, so an employer may rely on an employee's lack of qualifications as a justification for adverse action, despite an unreviewed administrative decision to the contrary. Prior administrative findings may or may not be considered evidence by the federal courts in a *de novo* review, *see Chandler*, 425 U.S. at 863 n. 39, 96 S.Ct. at 1961 n. 39, and evidence previously presented may be taken into account, but the Commission's findings are not preclusive and the district court must independently determine whether any genuine issue of material fact exists. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 363 (4th Cir.1985).

The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.