**Nancy C. STILLIANS, Appellant,**

v.

**STATE OF IOWA, et al., Appellees.**

**No. 87–1321.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 3, 1987.

Decided March 30, 1988.

Artis Reis Breon, Des Moines, Iowa, for appellant.

Scott M. Galenbeck, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Nancy C. Stillians appeals from an order of the district court[1] granting defendants' summary judgment motion in this suit brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1982) (ADEA). The district court held that Stillians was precluded from raising her discriminatory failure to promote and discriminatory discharge claims in federal court because: 1) the failure to promote claim could have been raised before the Iowa Merit Employment Commission (IMEC); and 2) the discharge claim was actually litigated before the IMEC. We affirm, although for somewhat different reasons.

## I. BACKGROUND

Stillians was employed by the Iowa Arts Council (IAC) from 1972 through June 17,

---

1. The Honorable Harold D. Vietor, Chief United States District Judge for the Southern District of Iowa.

1985. Beginning in 1977 she held the title of Program Director, a position just below that of the Director. In October 1984 the Director resigned, and Stillians sought the positions of Acting Director and Director. By the then applicable statutes, the "director shall be nominated by the council and appointed by the governor subject to confirmation by the senate to serve at the pleasure of the governor for a term of four years * * * *" Iowa Code § 304A.3 (1985) (since repealed). She was not selected for either position.

In March 1985 Jeanann Celli was appointed Director. On April 30, 1985, Stillians filed a charge of age discrimination, retaliation, and harassment with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission (EEOC) because the IAC failed to select her as Director. The Iowa Civil Rights Commission issued a right to sue letter on those charges.

On June 3, 1985, Stillians was notified that she was dismissed effective June 17, 1985. On June 24, 1985, Stillians alleged discriminatory discharge in filings with the Iowa Civil Rights Commission and the EEOC. On July 3, 1985, she also challenged her dismissal by filing an appeal with the IMEC pursuant to Iowa Code § 19A.14 (1985). After a hearing, the hearing officer issued a proposed decision finding that Stillians' termination was proper. The proposed decision was adopted by the IMEC. Stillians did not seek review of that decision in the Iowa state courts. Instead she filed the present suit in the United States District Court for the Southern District of Iowa.

## II. DISCUSSION

On appeal, Stillians argues that her failure to promote claim was not within the jurisdiction of the IMEC and thus could not have been litigated before that body. As to the discharge claim, Stillians argues that the ADEA is so similar to Title VII that we are bound by the Supreme Court's decision

in *University of Tenn. v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (Title VII suit not precluded by prior unreviewed state administrative decision).

### A. Failure to Promote

Although Stillians argues, and we agree, that her failure to promote claim was not actually litigated, we nevertheless affirm the order of the district court because Stillians' failure to promote claim is not cognizable under the ADEA. We have no subject matter jurisdiction to hear this claim.

The ADEA defines employee as:

an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.

29 U.S.C. § 630(f).[2]

Thus, the dispositive issues here are whether Stillians was seeking an appointment "on the policymaking level" and whether the appointment was subject to Iowa's civil service laws.

Whether the Director of the Iowa Arts Council is on a policymaking level depends on several factors. These include: 1) whether the Director has discretionary, rather than solely administrative powers, *E.E.O.C. v. Bd. of Trustees of Wayne Cty. Com. Col.*, 723 F.2d 509, 511 (6th Cir.1983); 2) whether the Director serves at the pleasure of the appointing authority, *E.E.O.C. v. Reno*, 758 F.2d 581, 584 (11th Cir.1985); and 3) whether the Director formulates pol-

**2.** Although 29 U.S.C. § 623(a)(1) makes it illegal to "discriminate against any *individual*" rather than any "employee", "it was clearly the intent of Congress that the term 'employee' * * * should apply to any person who has a right to bring an action under the Act, including an applicant for employment." 29 C.F.R. § 860.30 (1986).

icy, *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727 (2d Cir.1984). Furthermore, we do not think that any position that is filled by gubernatorial appointment and is subject to confirmation by a sovereign state senate should be considered as routine employment.

Stillians' status under the ADEA is, of course, a question of federal law, but we must look to state law to determine the scope of authority given to the Director of the Arts Council. *Reno,* 758 F.2d at 584.

█ Under Iowa law, now repealed, the Director of the Iowa Arts Council was appointed by and served at the pleasure of the governor. Iowa Code § 304A.3 (1985). Within the confines of his or her statutory duties, the Director was granted broad discretionary powers. For example, the Director had the authority to "[m]ake such surveys as may be deemed advisable of existing artistic and cultural programs and activities within the state," § 304A.5(3); "[e]mploy such administrative, professional, and other personnel as may be necessary for the performance of his powers and duties and fix such personnel's compensation within the amounts made available for such purposes, § 304A.6(1); "[m]ake and sign any agreements and perform any acts which may be necessary, desirable, or proper to carry out the purpose of this chapter, § 304A.6(2); and "[a]ppoint such advisory committees as he deems advisable and necessary to the carrying out of his assigned powers and duties," § 304A.6(4). Given these broad discretionary duties, we believe the position of the Director was undoubtedly on a policymaking level.

Although the Director was a policymaker, he or she nevertheless qualified as an "employee" if the position was "subject to the civil service laws of [the] State." Once again we must examine Iowa law—specifically Iowa Code § 19A.1 *et seq.* (1985) dealing with the state merit system. Iowa Code § 19A.3 provided that:

The merit system shall apply to all employees of the state and to all positions in the state government now exist-ing or hereafter established except the following:

\* \* \* \* \* \*

14. All appointments other than boards or commissions which are by law made by the governor or executive council \* \* \* \*

In her brief Stillians argues that the IMEC has no jurisdiction over the position of Director because the position was exempt under § 19A.3 (14), quoted above. We agree. Consequently, because the Director was on a policymaking level and was exempt from Iowa civil service laws, the position was not protected by the ADEA. Further, common sense dictates that political positions such as this should not be subject to extensive federal regulation. State governors must be given broad discretion to fill policymaking positions without fear of being sued by disappointed office seekers. While the policy behind the ADEA certainly is laudatory, in certain instances it must give way to the realities of a governmental system in which officials elected by the people are granted authority to fill certain high level positions with people they feel are most qualified.

**B. Discharge**

It is undisputed that Stillians' claim of illegal discharge was actually litigated before the IMEC. After extensive hearings, the hearing officer found that Stillians was discharged for non-discriminatory reasons. This conclusion was adopted by the IMEC. Although appeal to the state district court was permitted under Iowa Code § 19A.14 (1985), Stillians chose to pursue her claims anew in federal court.

The district court granted the state's motion for summary judgment, holding that the ADEA more closely resembles 42 U.S. C. § 1983 than Title VII and therefore, the ADEA claim is barred by the principles of preclusion discussed in *University of Tenn. v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

In *Elliott,* the plaintiff filed suit in federal court alleging that his proposed discharge was racially motivated and seeking relief under Title VII and 42 U.S.C. § 1983.

Prior to trial, a state administrative hearing was held and the proposed termination was found to be not racially motivated. Rather than appeal the administrative determination in the state court system, the plaintiff returned to federal court to pursue his claims. The district court granted the university's motion for summary judgment, holding that the administrative determination was entitled to preclusive effect. Following a decision by the Sixth Circuit Court of Appeals, the Supreme Court granted certiorari to determine whether unreviewed state administrative determinations preclude subsequent federal actions under Title VII and 42 U.S.C. § 1983.

Initially, the Court noted that 28 U.S.C. § 1738, which requires federal courts to give full faith and credit to judgments and records of state courts, does not apply to state administrative proceedings. Therefore, if state administrative determinations are to be given preclusive effect, it must be because of federal common law rules of preclusion.

The Court found that preclusion would be inappropriate in Title VII cases because of a conflict between a section of Title VII and the result which would come from application of rules of preclusion. Title 42 Section 2000e–5(b) states that the EEOC must give "substantial weight" to state or local findings. The Court found that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." 106 S.Ct. at 3225. The Court also focused on one of its prior decisions in which it found that a Title VII petitioner was entitled to a trial *de novo* notwithstanding a prior federal agency decision rejecting his discrimination claim. *Id. See Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed. 2d 416 (1976). Based on § 2000e–5(b) and *Chandler*, the Court concluded "that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." 106 S.Ct. at 3225.

Regarding 42 U.S.C. § 1983, however, the Court came to the opposite conclusion.

"We also see no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century." *Id.* at 3226. The Court stressed the value of giving preclusive effect to administrative determinations, including the litigant's interest in avoiding repetitive litigation, the public interest in conserving limited judicial resources, and the preservation of federalism. *Id.*

Thus, the most important lesson to be learned from *Elliott* is that when a federal statute does not specifically address a particular issue, in order to decide that issue we must ascertain Congressional intent. Title VII claims are not precluded because the Court found evidence that Congress intended that result. Likewise, traditional rules of preclusion were left untouched by 42 U.S.C. § 1983 because that was the intent of Congress.

Ascertaining Congressional intent is often a difficult endeavor. When a statute does not speak on an issue and the legislative history is silent, we are forced to decide between two conflicting results. Our decision should not be based on our opinion on what direction the statute should take. If the result intended by Congress seems inconsistent with the overall objectives of the statute, so be it. Only Congress legislates and only Congress can amend.

When interpreting a statute we should not forget what existed before it was enacted. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l. Bank v. New Jersey Dep't. of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986). More explicitly, "[s]tatutes which invade the common law * * * are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen Co. v. Johnson*, 343 U.S. 779,

783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952). In *Allen v. McCurry*, 449 U.S. 90, 97, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980), the Court noted that as early as 1871 "res judicata and collateral estoppel could certainly have applied in federal suits following state-court litigation between the same parties or their privies * * * * "[3] Although *Allen* involved preclusion under 28 U.S.C. § 1738, the Court in *Elliott* stated that the result would have been the same had common law principles been involved. Thus, when the ADEA was enacted in 1967 preclusion was firmly established in the federal common law. Therefore, we begin our analysis of the ADEA with a presumption favoring preclusion. Absent an affirmative showing of Congressional intent to derogate from the common law, ADEA claims may be precluded by prior unreviewed state administrative determinations.

The arguments of the parties in this case and the reasoning of the district court all parallel the analysis used by the Seventh Circuit in *Duggan v. Board of Educ. of E. Chicago Heights*, 818 F.2d 1291 (7th Cir. 1987). Because we believe that *Duggan* is of dubious validity, we decline to follow it in this case. Our disagreement with *Duggan* begins with the statement by the court that "[o]ur task is to determine whether there are enough parallels between Title VII and the ADEA to justify the * * * inference [that Congress intended that administrative preclusion should not apply]." *Id.* at 1294. The court in *Duggan* found more similarities to Title VII than dissimi-

larities and from this concluded that preclusion should not apply.

Comparing the ADEA with Title VII and 42 U.S.C. § 1983 does not address the ultimate issue whether Congress intended to abrogate traditional rules of preclusion when it enacted the ADEA. Even if the ADEA more closely parallels Title VII than § 1983, if Congress did not intend to abrogate preclusion when it enacted the ADEA, then preclusion should still apply. We should not reason by analogy when interpreting statutes. The proper analysis is to examine the ADEA on its own for expressions of Congressional intent rather than merely compare and contrast it with Title VII.[4]

One of the major factors in the Supreme Court's reasoning in *Elliott* was 48 U.S.C. § 2000e–5(b) which provides, in part, that the EEOC must "accord substantial weight to final findings and orders made by the State or local authorities in proceedings commenced under State or local [employment discrimination] law." 106 S.Ct. at 3225. Because giving substantial weight is inconsistent with giving preclusive effect, the Court had some indication of Congressional intent to guide it.

█ We believe that the absence of a similar provision from the ADEA goes far toward resolving the issue before us. While we may not wish to imply Congressional intent from the absence of a similar provision, the applicability of *Elliott* to the present case certainly is weakened by its absence. When the only statutory language upon which the Court focused is

3. Traditional principles of preclusion are *no less* applicable to administrative proceedings than to court proceedings. As long as the "administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Enforcing repose is equally important where state or federal administrative factfinding is involved. *Elliott*, 106 S.Ct. at 3226.

4. Several other circuits have been faced with the issue before us today. In *Rosenfeld v. Department of Army*, 769 F.2d 237 (4th Cir.1985), the

court, prior to *Elliott*, found a presumption against administrative preclusion in discrimination cases. We believe *Elliott* casts considerable doubt on this decision. In *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641 (11th Cir.1987), the court held that preclusion was inappropriate because four of the plaintiffs had not received a fair hearing before the agency. In dicta, however the court indicated that given the proper circumstances it could be presuaded to follow a *Duggan*-like analysis. *Id.* at 646. Finally, the Ninth Circuit in *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir.1986) held, without analysis, that administrative preclusion is appropriate in ADEA cases.

absent it seems illogical to infer an identical Congressional intent simply because other sections of the statutes may be similar.

Keeping in mind the presumption in favor of retaining long-standing common law principles, we find it highly probative that nothing in the ADEA is inconsistent with administrative preclusion. In fact, preclusion is consistent with the ADEA. For example, after the sixty-day period required by 29 U.S.C. § 633(b), the petitioner may supersede any further state proceedings by filing suit in federal court. 29 U.S.C. § 633(a). Given that the petitioner has the discretion to forego state remedies in favor of a federal lawsuit, it is not at all unfair to require the petitioner to live with his decision. If the petitioner chooses to remain in the state system and loses at the administrative level it seems ludicrous to give him the choice of either appealing to the state courts and thereby being barred in federal court by 28 U.S.C. § 1738, or filing suit anew in the federal district court. Were we to allow such a choice the state administrative proceeding would be reduced to nothing more than an opportunity for the petitioner to test his case and practice his presentation. *Cf. Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 478, 102 S.Ct. 1883, 1895, 72 L.Ed.2d 262 (1982) (giving finality to state court judgments increases parties' incentive to pursue review in state courts).

In situations where the state is able to resolve a dispute within sixty days, the petitioner would be barred from federal court, but all of the purposes of the ADEA, including prompt resolution of discrimination claims, would be served.

There is no overriding federal policy that discrimination claims be heard in federal court. For example, under 28 U.S.C. § 1738, prior state court determinations can preclude Title VII claims, *Kremer*, 456 U.S. 461, 102 S.Ct. 1883, as well as ADEA claims. *Nichols v. City of St. Louis*, 837 F.2d 833 (8th Cir.1988). We believe the Court reached its decision in *Elliott* not because of any strong policy in favor of federal court participation in discrimination cases, but because preclusion would be inconsistent with statutory and decisional law unique to Title VII.

Finally, Stillians has shown no evidence of Congressional intent to deviate from traditional rules of preclusion. Understandably, her argument is an attempt to discredit the way in which the district court compared and contrasted the ADEA with Title VII. As discussed above, however, we disapprove of this method of analysis. In any event, our research has left us with the firm conviction that Congress did not intend to abrogate the common law when it enacted the ADEA. Whether this was by conscious design or by default is really not important. Prior to the adoption of the ADEA, preclusion was alive and well in the federal common law, and absent a clear showing of Congressional intent to the contrary it should continue on. Such a showing has not been made in this case.

Having determined that the decision of the IMEC may be given preclusive effect, we now must ascertain whether Stillians was given a full and fair hearing before an administrative body, acting in a judicial capacity. If she was provided such a hearing, then the decision of the IMEC must be given the preclusive effect to which it is entitled under Iowa law. As noted in *Elliott*, 106 S.Ct. at 3227:

* * * 'Perhaps the major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force,' *id.* [*Thomas v. Washington Gas Light Co.*, 448 U.S. 261], at 289, 100 S.Ct. [2647], at 2664 [65 L.Ed.2d 757 (1980) ] (WHITE, J., concurring in judgment), and this purpose is served by giving preclusive effect to state administrative factfinding rather than leaving the courts of a second forum, state or federal, free to reach conflicting results. Accordingly, we hold that when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' *Utah Construction & Mining Co., supra*, 384 U.S., at 422, 86 S.Ct., at 1560, federal courts must give the agency's factfinding the same preclu-

sive effect to which it would be entitled in the State's courts.

(Footnotes omitted).

■ We agree with the district court that Stillians' hearing provided her with ample opportunity to present her case. Further, under Iowa law, administrative determinations are entitled to preclusive effect, *Toomer v. Iowa Dep't. of Job Service*, 340 N.W.2d 594, 598 (Iowa 1983). An earlier Iowa case set forth the requirements for issue preclusion:

(1) the issue concluded must be identical;

(2) the issue must have have been raised and litigated in the prior action;

(3) the issue must have been material and relevant to the disposition of the prior action; and

(4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). These requirements have been met in this case.

After hearing Stillians' claim, the IMEC concluded that she had been terminated for good cause. This conclusion necessarily required a rejection of Stillians' claims of age discrimination and retaliation. Had the IMEC found that Stillians' discharge was for any illegal purpose—including age —she would have been granted reinstatement. Iowa Code § 19A.14 (1985). Consequently, under Iowa law the decision of the IMEC is entitled to preclusive effect.

## III. CONCLUSION

The order of the district court is affirmed. First, Stillians' failure to promote claim is not cognizable under the ADEA and we lack subject matter jurisdiction to hear it. Second, the illegal discharge claim is precluded by the state administrative determination that Stillians was terminated for just cause.

LAY, Chief Judge, dissenting.

I respectfully dissent. The majority holds that resolution of the plaintiff's ADEA claim by a state administrative agency provides issue preclusion of that claim filed in the federal court. I am afraid that in the interest of giving a final adjudication due to the weakness of the plaintiff's factual case, the majority has written some bad law. The majority's analysis and conclusion will cause more direct filings of age discrimination cases in the federal forum and encourage claimants to bypass the opportunity for state EEOC exhaustion, which serves to terminate many cases without federal litigation.

**Preclusive Effect**

I would adopt the opinions of the Fourth and Seventh Circuits, which contain persuasive analyses as to why there should be no preclusive effect given to a state agency's determination in age discrimination cases. The decision in *Duggan v. Board of Educ. of E. Chicago Heights*, 818 F.2d 1291 (7th Cir.1987), was rendered by a distinguished panel of the Seventh Circuit composed of Judges Cudahy, Easterbrook, and Posner. In an opinion written by Judge Cudahy, that court made an exhaustive analysis of the case law and legislative intent before concluding that unreviewed administrative decisions would not preclude subsequent actions under the ADEA.[1]

Judge Cudahy pointed up the similarities in the deferral mechanisms of the ADEA and Title VII. In addition to the fact that both statutes provide a limited opportunity for state agency resolution, the ADEA's deferral mechanism "was patterned after and is virtually *in haec verba* with" the deferral mechanism in Title VII, *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). The Seventh Circuit noted the Supreme Court's holding that, "the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial

---

1. Here, the majority concludes without any supporting authority that a comparison of the ADEA and Title VII is an improper method of determining congressional intent. Yet the majority opinion proceeds to make just such a comparison immediately following that conclusion. Maj. op. at 282. The Supreme Court's decision in *Elliott* utilized just such an approach by comparing Title VII and section 1983.

construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 57, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974). Judge Cudahy then concluded that this proposition was equally true for the ADEA because its substantive provisions were also derived from Title VII. *Duggan,* 818 F.2d at 1295 (citing *Lorillard, A Division of Loew's Theatres, Inc. v. Pons,* 434 U.S. 575, 585, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978)). That court also observed that EEOC decisions receive de novo review in federal court, and concluded that giving preclusive effect to a state agency's decision would produce inequitable results dependent upon whether a particular state had empowered a state agency to resolve such disputes. This would be true, the court reasoned, because in those states the agency's decision would be preclusive whereas in the remaining states the EEOC's decision would not preclude litigation.

Finally, the court concluded that the administrative proceedings under the ADEA were due *less* deference than such proceedings under Title VII. Under 29 U.S.C. § 633(b) a claimant cannot institute a federal suit for sixty days after filing with the state agency, but the claimant can file a complaint with the EEOC. However, under Title VII, *all* federal proceedings, both administrative and judicial, are deferred for sixty days after state proceedings are begun. Additionally, 29 U.S.C. § 633(a)

states that, "upon commencement of action under this Act such action shall supersede any State action," whereas Title VII contains no such limitation. Both of these provisions in the ADEA demonstrate the congressional intent to limit the effect of a state agency's action.

In a decision predating *Elliott,* the Fourth Circuit also held ADEA claims to be analogous to Title VII claims and denied any preclusive effect to prior administrative decisions. *Rosenfeld v. Department of the Army,* 769 F.2d 237 (4th Cir.1985). The Fourth Circuit relied, in part, on the Supreme Court's decision in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (federal employees entitled to a trial de novo on a Title VII claim, not just judicial review of federal administrative action).

As the majority concedes, the only decision indicating the opposite result is *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279 (9th Cir.1986). *Mack* involved a discharged employee who was denied state unemployment benefits by the state's Unemployment Insurance Appeals Board. He brought an ADEA claim in federal court. The court of appeals presumed without discussion that *Elliott* required the agency's decision be given issue preclusive effect if the agency had acted in a judicial capacity and if Mack had had an adequate opportunity to litigate. That court concluded, however, that Mack was not precluded from filing his ADEA claim because he had not had an adequate opportunity to litigate the issue before the administrative panel.[2]

2. The Eleventh Circuit, in two cases, has examined the preclusive effect of unreviewed state agency decisions under *Elliott. Gjellum v. City of Birmingham,* 829 F.2d 1056 (11th Cir.1987); *Delgado v. Lockheed–Georgia Co., A Division of Lockheed Corp.,* 815 F.2d 641 (11th Cir.1987). After their discharge from Lockheed, Delgado and others filed for unemployment benefits with the Georgia Employment Security Agency. All benefits were administratively denied, and they filed suit under the ADEA in federal court. The court noted that both Title VII and the ADEA share "a common purpose in eliminating discrimination in the workplace * * *." *Delgado,* 815 F.2d at 646. That circuit, too, concluded that the differences in the deferral mechanisms required that less deference be given an ADEA action than an action under Title VII. How-

ever, the court then concluded that it need not decide the preclusion issue because the state agency involved did not afford the appellants an adequate opportunity to litigate their age discrimination claims. Thus there was no preclusion in the case before that court, irrespective of its interpretation of the effects of *Elliott.*

In *Gjellum,* the Eleventh Circuit interpreted *Elliott* as requiring nothing more than issue preclusion, not claim preclusion, even under section 1983. *Gjellum v. City of Birmingham,* 829 F.2d 1056 (11th Cir.1987). They concluded that even though they were to look to state preclusion law, when federal rights were involved those rights must be balanced against the nature of the state forum. They held that the importance of the federal rights in that case

Although we are not bound by our sister circuits' determinations, it seems to me that the majority's decision creates unnecessary deviation from the establishment of uniform princples of law governing this area. *See Aldens, Inc. v. Miller*, 610 F.2d 538, 541 (8th Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). We should give greater deference to our sister circuits' reasoning and analysis, particularly when, as here, there is no obvious error or flaw in that reasoning.

**Failure to Promote**

The majority finds no subject matter jurisdiction of plaintiff's claim that she was additionally discriminated against by IAC's failure to promote her to the position of director. This issue of subject matter jurisdiction was not raised in the trial court nor has it been raised on appeal. The issue on appeal relates to the trial court's application of claim preclusion in holding that Stillians had had an opportunity to bring the claim before the IMEC. Claim preclusion is inapplicable here. Preclusive effect of an agency's decision has been limited by the Supreme Court of the United States to issue preclusion and does not involve the full scope of res judicata. *University of Tenn. v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). The Iowa Supreme Court has held that failure to actually litigate an issue prevents the prior decision from having any preclusive effect. *In re Kjos*, 346 N.W.2d 25 (Iowa 1984).

The panel finds the position of director to be at the policy-making level and therefore exempt under the ADEA. Because this issue was not raised in the district court and this court's resolution of the same will come as a surprise to the litigants, I would make no judgment on the issue. In all fairness to the parties, we should give them an opportunity to address the issue before passing on it. There exists a serious question in my mind whether the panel is right. In any event, judicial fairness requires that the issue be fully addressed by the litigants before final adjudication here.

I therefore dissent from the entire majority opinion.

---

required that no claim preclusive effect be given the unreviewed state agency decision. *Gjellum*, 829 F.2d at 1064. That court also held that

*Elliott* required preclusion only for factfinding actually done by the agency. *Id.* at 1068.