BRIGHT, Circuit Judge,
concurring in part and dissenting in part.
Under most circumstances, the Privacy Protection Act prohibits the government, in connection with the investigation of a criminal offense, from searching and seizing documentary materials from news or information organizations. See 42 U.S.C. § 2000aa(b). Under the Act, the government may not obtain a search warrant but must instead rely upon a subpoena duces tecum or the voluntary release of the materials. The Act, however, exempts certain situations where immediate seizure is justified, such as where a risk exists that the materials may be destroyed or another person may be physically harmed. The ease before us raises the question whether government officials may claim such exceptions to the Privacy Protection Act when the application for the search warrant is devoid of any statements supporting those exceptions. Because I conclude that the Privacy Protection Act constrains government action by requiring the government to establish an exception to the Act before it can obtain a warrant to search the office of a news agency, I dissent from Part II of the opinion.
I agree with the majority that “[t]he task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself.” United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The Privacy Protection Act specifically lists the four exceptions to the Act and requires “reason to believe” that one of the invoked exceptions applies. Contrary to the position of the majority, however, the statute contains no direct statement as to whether it is the issuing magistrate judge who must determine the existence of an exception or whether its existence can be asserted after-the-fact by the investigating authorities.[1] The Act establishes a substantive standard but is silent as to the appropriate procedural requirements.
Although the majority opinion explains that the language of the statute is not ambiguous, it is the absence of procedural requirements rather than any ambiguity that is crucial in deciding this case. The areas the statute addresses are clear and we need not and should not embellish upon them. The statute, however, does not address the process for obtaining a warrant. It is this ab *1358 sence of a statutory directive which faces us here.
Where the statute does not speak on an issue, this court has turned to other sources to determine the intent of Congress. The legislative history may provide guidance. See Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 611-12 n. 4, 111 S.Ct. 2476, 2484-85 n. 4, 115 L.Ed.2d 532 (1991); Arkansas AFL-CIO v. F.C.C., 11 F.3d 1430, 1440 (8th Cir.1993) (en banc) (conducting a Chevron analysis). The circumstances surrounding the enactment of the statute can also be helpful in deciphering congressional intent. See Security Bank Minnesota v. C.I.R., 994 F.2d 432, 436 (8th Cir.1993). When interpreting a statute, we must consider the statute in light of judicial concepts existing before it was enacted. Estate of Wood v. C.I.R., 909 F.2d 1155, 1160 (8th Cir.1990); Stillians v. Iowa, 843 F.2d 276, 280 (8th Cir.1988). Finally, we look to the overall purpose of the Act. See In re Graven, 936 F.2d 378, 385 (8th Cir.1991).
The Privacy Protection Act was prompted by the Supreme Court’s decision in Zurcher v. Stanford Daily, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). See S.Rep. No. 874, 96th Cong., 2d Sess., reprinted in 1980 U.S.C.C.A.N. 3950, 3950-51. In Zurcher, the Stanford Daily, a student newspaper, had published articles and photographs of a demonstration at which several police officers were assaulted. 436 U.S. at 550-51, 98 S.Ct. at 1973-74. As part of its investigation, the district attorney obtained a search warrant and searched the newspaper’s offices for additional photographs of the incident. Id. The newspaper brought a declaratory judgment action claiming, among other things, that the search warrant was issued in violation of the Fourth Amendment. The district court held, “unless the Magistrate has before him a sworn affidavit establishing proper cause to believe that the materials in question will be destroyed, or that a subpoena duces tecum is otherwise ‘impractical’, a search of a third party for materials in his possession is unreasonable per se, and therefore violative of the Fourth Amendment.” Stanford Daily v. Zurcher, 353 F.Supp. 124, 127 (N.D.Cal.1972).[2] The court of appeals affirmed per curiam, adopting the opinion of the district court. 550 F.2d 464 (9th Cir.1977). The Supreme Court reversed, holding that the Fourth Amendment does not provide any special protection against search and seizure for the possessor of documentary evidence who is not a suspect in the offense under investigation. 436 U.S. at 560, 98 S.Ct. at 1978-79.
At the close of the majority opinion in Zurcher, the Court stated, “[o]f course, the Fourth Amendment does not prevent or advise against legislative or executive efforts to establish noneonstitutional protections against possible abuses of the search warrant procedure, ...” Id. at 567, 98 S.Ct. at 1982. Congress took the “invitation” of the Court and enacted the Privacy Protection Act of 1980. See 1980 U.S.C.C.A.N. at 3952.
Congress stated that the Privacy Protection Act responded to the Zurcher decision. Id. at 3950. In Zurcher, the Supreme Court addressed whether the application for a search warrant must establish “special circumstances” before a warrant to search the office of a news agency may lawfully issue. Zurcher focused entirely on the substantive issue of what circumstances must be established; there was no dispute as to when or by whom the determination would be made. Both Justice White’s majority opinion and the dissenting opinion of Justice Stevens indicated that it was the issuing magistrate judge who would determine whether the necessary requirements were fulfilled. See 436 U.S. at 550, 577, 98 S.Ct. at 1987-88. Thus the legislative reaction to Zurcher focused on the substantive standard rather than the undisputed procedural framework. The logical *1359 conclusion is that Congress envisioned the procedural framework to remain intact.
The legislative history of the Act indicates that Congress assumed that the exceptions to the Act would be considered by a magistrate judge prior to the issuance of a search warrant. In discussing the third exception to the Act, the Senate Report provides:
Among the factors which the Committee believes might be considered by a magistrate in determining whether materials might be destroyed are evidence of a close personal, family or business relationship between the person in possession of the material with a person who is a suspect; evidence of prior, similar conduct by a party who may exert control of the material; or evidence that a party in possession of the material has expressed an intent to hide, move, or destroy the material sought.
1980 U.S.C.C.A.N. at 3959-60 (emphasis added). Senators Orrin Hatch and Alan Simpson of the Senate Judiciary Committee submitted “additional views” which were included in the legislative history. The Senators stated:
The Stanford Daily case held that the Constitution does not require a magistrate to conclude that warrant searches of the press are necessarily “unreasonable”. The committee in adopting [the Act] is, in effect, instructing magistrates and others empowered to issue warrants that a search directed at the documentary materials of journalists is to be considered in itself “unreasonable” in the absence of certain enumerated circumstances.
1980 U.S.C.C.A.N at 3968.
The legislative history of the Act also indicates that although the Privacy Protection Act is a statutory rather than a constitutional limitation on the power of the government, it was intended to be read in conjunction with the Fourth Amendment.[3] First, Zurcher was a Fourth Amendment case. Second, the “legal history” of the Privacy Protection Act as developed in the Senate Report is comprised entirely of the historical development of the Fourth Amendment. See 1980 U.S.C.C.A.N. at 3952-54. Finally, in defining the purpose of the Act, the Senate Report stated, “The Committee bill, as amended, affords the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment.” 1980 U.S.C.C.A.N. at 3950. The legislative intent was to build upon the Fourth Amendment.
In United States v. United States District Court, 407 U.S. 297, 316, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972), the Supreme Court relayed “the very heart of the Fourth Amendment directive:
where practical, a governmental search and seizure should represent both the efforts of the officer to gather evidence of wrongful acts and the judgment of the magistrate that the collected evidence is sufficient to justify invasion of a citizen’s private premises or conversation. Inherent in the concept of a warrant is its issuance by a ‘neutral and detached magistrate.’ ”
Id. (citation omitted).[4] In the warrant process, it is the province of the magistrate judge to independently find the existence of the requisite conditions before a lawful war *1360 rant can issue. When viewed in conjunction with this constitutional allocation of responsibility, the Privacy Protection Act logically plaees the determination of whether an exception exists in the discretion of the magistrate judge issuing the search warrant.
By construing the Act so as not to require a prior judicial determination, the majority pulls the teeth out of the statute. The purpose of the Privacy Protection Act is to prevent the search and seizure of documentary materials from persons disseminating information. After-the-fact review can only punish violation, not prevent it. Furthermore, permitting an after-the-fact showing of what was “known” to the affiant but not communicated to the magistrate judge contains too great a potential for abuse; there could often be no assurance that the critical facts and details were in fact known prior to the issuance of the warrant. See 2 Wayne R. La-Fave, Search and Seizure § 4.3(a), at 459 (3d ed. 1996).
In its decision, the majority ignores the circumstances surrounding the enactment of the Privacy Protection Act, its legislative history, its intimate association with Fourth Amendment principles, and its purpose of preventing searches and seizures. For these reasons, I must dissent as to Part II of the court’s opinion.

. The text of the statute implies that the issuing magistrate judge must find the existence of an exception before a lawful warrant can issue. One of the exceptions pertains to instances where the party in possession has failed to comply with a subpoena duces tecum and further delay would “threaten the interests of justice.” 42 U.S.C. § 2000aa(b)(4). In such an event. section 2000aa(c) requires that the person in possession be afforded the opportunity to submit an affidavit stating why the materials sought are not subject to seizure before the warrant issues. This exception, without directly stating so, presupposes that a magistrate judge, rather than the investigating authorities, makes the determination.

. In explaining its decision, the district court stated,
It should be apparent that means less drastic than a search warrant do exist for obtaining materials in possession of a third party. A subpoena duces tecum, obviously, is much less intrusive than a search warrant: the police do not go rummaging through one's home, office, or desk if armed only with a subpoena. And, perhaps equally important, there is no opportunity to challenge the search warrant prior to the intrusion, whereas one can always move to quash the subpoena before producing the sought-after materials.
Stanford Daily v. Zurcher, 353 F.Supp. 124, 130 (N.D.Cal.1972).

.The language of the statute implies that the Act was intended to be a statutory extension of the Fourth Amendment. Section 2000aa-6(e) provides that the statute does not extend the application of the exclusionary rule: "Evidence otherwise admissible in a proceeding shall not be excluded on the basis of a violation of this chapter.” Nothing on the face of the Act specifically invokes the exclusionary rule. Unless the Act were intended as a statutory extension of the Fourth Amendment, disclaiming the exclusionary rule would be an anomaly. The presence of this provision thus indicates that the statute extends the framework of the Fourth Amendment, but is not intended to extend the exclusionary rule.

.Justice Jackson underscored the importance of a neutral magistrate judge in effectuating the goals of the Fourth Amendment:
The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.
Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).