James DUGGAN, Plaintiff-Appellant,

v.

**BOARD OF EDUCATION OF EAST CHICAGO HEIGHTS, DISTRICT NO. 169, COOK COUNTY, ILLINOIS, Defendant-Appellee.**

No. 86–1855.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1986.

Decided April 24, 1987.

As Modified May 27, 1987.

Joan M. Eagle, Weiner, Neuman & Spak, Chicago, Ill., for plaintiff-appellant.

Mark Flynn, E.E.O.C. Gen. Counsel, Washington, D.C., amicus curiae.

Robert H. Ellch, Scariano, Kula, Ellch, & Hines, Chtd, Chicago Heights, Ill., for defendant-appellee.

Before CUDAHY, POSNER and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

This case presents the question whether unreviewed findings of fact made during a state administrative proceeding should be given preclusive effect in a subsequent suit brought under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.* (1982).[1] We hold that they should not be given such effect.

I.

James Duggan, a tenured public school teacher, was employed by the East Chicago Heights School District (the "District" or the "Board"), from the 1969–70 academic year until his termination on July 26, 1983. The summer before Duggan was dismissed, the Board issued a Notice of Remediation which identified deficiencies in Duggan's teaching performance and which directed him to take particular steps to remedy these deficiencies.[2] A series of

1. The Equal Employment Opportunity Commission filed an *amicus curiae* brief in support of the position of the appellant.

2. The Notice of Remediation charged Duggan with the following four deficiencies:

A. You fail to maintain a physical environment in your classroom which is conducive to orderly behavior.
B. You fail to maintain a classroom management and discipline system which is conducive to learning.

classroom observations of Duggan's teaching performance were conducted by school officials during the 1982–83 school year, and a number of conferences were held with Duggan. Duggan was dismissed the following summer because the Board claimed that his performance did not improve. At the time he was terminated, the Board provided Duggan with a list of charges.[3]

On January 17, 1984, Duggan filed a charge of racial and age discrimination with the Equal Employment Opportunity Commission (the "EEOC"). Duggan, who is white, claimed that he had been harassed and subjected to employment conditions different than those of younger black teachers. (The majority of teachers employed by the East Chicago Heights School District are black, and the school district in which Duggan taught had an all black student population.)

Duggan was entitled to a hearing on the charges under state law. Ill.Rev.Stat. ch. 122, para. 24–12 (1985). A nine-day administrative hearing was held during June and July of 1984 to determine if the school district had cause to dismiss Duggan and to consider Duggan's claims of racial and age discrimination. Duggan was represented by counsel at the hearing. Although he had the right to present evidence, Duggan alleges that he was unable to introduce any documentary evidence to establish his claims of discrimination because discovery was not available to him; instead, he related specific conversations with school officials in which his age and race were mentioned. Appellant's Brief at 9. On September 20, 1985, the hearing officer sustained Duggan's dismissal, finding that the Board had established that "Duggan failed to maintain student disci-

pline and behavior which is conducive to learning." *In re Hearing between East Chicago Hts. School Dist. and Duggan,* Award and Opinion at 46 (issued Sept. 20, 1985). The hearing officer concluded that he was unable to credit Duggan's charge of race discrimination; he also apparently considered and dismissed Duggan's claim of age discrimination, but his opinion is not clear on this point. *Id.* at 42.

Duggan received his right-to-sue letter from the EEOC on July 25, 1985. On October 24, 1985, Duggan filed suit in federal court, claiming that the Board had discriminated against him on the basis of age in violation of the ADEA and on the basis of race in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* and section 1983, 42 U.S.C. § 1983. Duggan alleged that from 1982 until his dismissal he had been harassed, unfavorably evaluated and eventually dismissed because of his age and race. Amended Complaint, Count I ¶¶ 8, 9 (age); Count II ¶ 8 (race) (filed Oct. 24, 1985). Duggan also filed a complaint in state court, requesting judicial review of the administrative proceeding, Ill.Rev.Stat. ch. 110, para. 3–101 *et seq.* (1985), but he subsequently filed a motion to have that action voluntarily dismissed without prejudice. Duggan's motion was granted on August 15, 1986.

The Board filed a motion to dismiss the federal suit, and the district court granted that motion, holding that Duggan was barred by *res judicata* from maintaining his suit, even though the decision of the hearing officer had not been reviewed by a state court. *Duggan v. Board of Educ. of East Chicago Hts. School Dist.,* 40 FEP Cases (BNA) 1208 (N.D.Ill.1986). The court relied primarily on *Buckhalter v.*

---

C. Your instruction indicates you do not utilize proper instruction techniques.
D. You fail to promote a positive working relation with school administrative staff members.

3. The Board informed Duggan that his dismissal was based on the following charges:
   I. You are incompetent in that you fail to maintain student discipline and behavior which is conducive to learning and you fail to properly utilize instructional techniques.

II. You are insubordinate in that you have refused to seriously participate in an analysis of your teaching performance or accept suggestions in a constructive manner.
III. You have failed to remediate your teaching conduct and performance as ordered by the Board of Education on August 11, 1982.
IV. In the opinion of the Board of Education, the best interests of the School District require your dismissal.

*Pepsi-Cola General Bottlers*, 768 F.2d 842 (7th Cir.1985), *cert. granted and judgment vacated*, —— U.S. ——, 106 S.Ct. 3328, 92 L.Ed.2d 735 (1986), in which this court held that an unreviewed decision of the Illinois Human Rights Commission that ruled against a plaintiff's claim of race discrimination bars a subsequent Title VII and section 1983 suit so long as the agency was acting in a judicial capacity in ruling on the claim and the plaintiff had a full and fair opportunity to litigate the issue. *Id.* at 852. The district court in this case extended *Buckhalter's* holding to claims brought under the ADEA, and it found that Duggan had had a full and fair opportunity to litigate his claims of racial and age discrimination before the hearing officer. Although discovery was not available to Duggan in the administrative proceeding and the hearing was not conducted in strict conformity with the rules of evidence, Duggan made no showing as to how he was prejudiced by either factor. 40 FEP Cases at 1211–12. Duggan appeals.

## II.

■ Since the district court issued its opinion in this case, the Supreme Court decided *University of Tennessee v. Elliott*, —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). The Court held in *Elliott* that unreviewed factual determinations by state agencies are not entitled to preclusive effect where the plaintiff has brought a discrimination claim under Title VII in federal court. *Id.* at 3225.[4] But the Court also held that unreviewed proceedings could preclude a subsequent claim based on section 1983 if the state agency was acting in a judicial capacity in resolving the disputed factual issues and the parties had an adequate opportunity to litigate. *Id.* at 3227. On appeal, the school district concedes that the district court's holding as to Duggan's Title VII claim must be reversed under *Elliott*. Appellee's Brief at 4.

■ With respect to Duggan's section 1983 claim, he failed to raise this matter until his reply brief. Rule 28(a) of the Federal Rules of Appellate Procedure provides that a statement of issues must appear in appellant's initial brief; under Rule 9(e) of the Rules of the United States Court of Appeals for the Seventh Circuit,[5] issues appearing for the first time in a reply brief will not be considered by this court. *In re Bear*, 789 F.2d 577, 579 (7th Cir.1986). Counsel for appellant conceded at oral argument that Duggan had waived his section 1983 claim by failing to present it in his opening brief.[6] The issue that remains before us therefore is whether an unreviewed state administrative decision should be given preclusive effect in a subsequent suit brought under the ADEA.[7]

4. The Supreme Court granted certiorari in *Buckhalter*, vacated the opinion and remanded for reconsideration in light of *Elliott*. 106 S.Ct. 3328 (1986).

5. This circuit has amended its circuit rules effective March 1, 1987. Former Rule 9(e), which is applicable in this case, has been carried over unchanged and is now Rule 28(e).

6. We note, of course, that under *Elliott* section 1983 claims may be collaterally estopped by appropriate administrative proceedings. 106 S.Ct. at 3227.

7. Section 1738 of 28 U.S.C. and its underlying concern that federal courts accord due deference to the determinations of state courts are not implicated in this case. Section 1738 provides, in relevant part:

The records and judicial proceedings of any court of any … State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such … records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738 (1982). As the Supreme Court noted in *Elliott:*

Title 28 U.S.C. § 1738 governs the preclusive effect to be given the judgments and records of state courts, and is not applicable to the unreviewed state administrative factfinding at issue in this case.

106 S.Ct. at 3224. The question presented here is whether a federal common law rule of preclusion is consistent with Congress' intent in enacting the ADEA.

## III.

The Supreme Court held in *Elliott* that Congress did not intend that a prior unreviewed administrative proceeding could preclude a plaintiff from being afforded a trial *de novo* on his Title VII claim. The Court based its conclusion on section 2000e–5(b) of Title VII and its prior decision in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Section 2000e–5(b) provides that the EEOC, in investigating discrimination charges, must give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law." 42 U.S.C. § 2000e–5(b). It would be nonsensical to provide that the EEOC must give only "substantial" weight to state or local findings of fact if the federal court that subsequently hears the Title VII claim must give preclusive effect to these same state or local administrative factual determinations. The intervening EEOC investigation would be "pointless." *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 470 n. 7, 102 S.Ct. 1883, 1891 n.7, 72 L.Ed.2d 262 (1982). The Court also concluded that applying administrative *res judicata* in a Title VII suit would be contrary to its holding in *Chandler.* In that case, the Court held that federal employees enjoy the same right to trial *de novo* of their Title VII claims after administrative review as is accorded private employees. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974) (recognizing private employee's right to trial *de novo* under Title VII); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (same).[8]

On the question whether state or federal administrative determinations receive the same treatment under the ADEA as under Title VII, the two circuits which have addressed the matter have split. Before the

Supreme Court decided *Elliott,* the Fourth Circuit concluded that an unreviewed administrative determination by a federal agency is not entitled to preclusive effect in a subsequent ADEA claim brought by a federal employee. *Rosenfeld v. Department of the Army,* 769 F.2d 237 (4th Cir. 1985). The court found that *Alexander* and *Chandler* established a presumption against administrative preclusion in discrimination cases and that there is no evidence that Congress intended to override this presumption in the context of the ADEA. The similarities between Title VII and the ADEA justified extending the principles underlying *Alexander* and *Chandler* to age discrimination claims: both statutes provide for parallel or overlapping administrative and judicial remedies, and both ultimately favor judicial resolution of disputed factual issues. *Id.* at 239.

The Ninth Circuit in *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279 (9th Cir.1986), on the other hand, held without analysis that administrative *res judicata* can operate in a subsequent ADEA suit if the state administrative agency acted in a judicial capacity in resolving disputed issues of fact and if the parties had an adequate opportunity to litigate. Although *Mack* was decided after *Elliott* (and in fact cites *Elliott*), the Ninth Circuit did not explain why ADEA claims should be treated differently from Title VII claims for purposes of applying administrative *res judicata.*

The Board, of course, argues here that the ADEA does not reveal clearly enough a Congressional intent to reject administrative *res judicata.* Therefore the obvious parallel with Title VII should not apply. But the intent of Congress was no more explicit in the context of Title VII, yet the Supreme Court in *Elliott* had no difficulty in inferring it. Our task is to determine whether there are enough parallels between Title VII and the ADEA to justify the same inference.

8. On the other hand, with respect to administrative *res judicata* in connection with section 1983 claims, the Court [saw] no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century. *Elliott,* 106 S.Ct. at 3226.

In fact, a thorough comparison of the deferral mechanisms of the ADEA, 29 U.S.C. § 633, and Title VII, 42 U.S.C. § 2000e–5, strongly suggests that, with respect to administrative *res judicata*, the two statutes should be construed alike. In general, deferral mechanisms give a state agency, having authority under state law to address charges of discrimination, a limited opportunity to consider such claims before the federal machinery can be set in motion.[9] Deferral mechanisms effectively define the relationship between state agencies, the EEOC and the federal judiciary.

Both Title VII and the ADEA provide state agencies with a limited opportunity to resolve discrimination claims before a federal suit can be filed. The ADEA's deferral mechanism is derived in large measure from Title VII. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). Under the deferral provisions of Title VII and the ADEA, claims of employment discrimination can be considered in several forums, including the state agency charged with remedying such complaints, the EEOC and federal court. Congress obviously intended that persons with discrimination claims first submit them to state and federal agencies in the hope that the complaint could be resolved through administrative means before turning to the courts. *Id.* Given the multiple forums provided for in Title VII and the ADEA and the place of the state agency and EEOC in the process as informal agents of reconciliation, it is unlikely that Congress intended the process to effectively stop at the state agency level before *any* court has had the opportunity to consider the discrimination claim. *Cf. Kremer*, 456 U.S. at 478, 102 S.Ct. at 1895 (a prior state court judgment can deny an individual the right to a federal trial *de novo* on his Title VII claim). And as the Supreme Court noted in *Alexander:*

> the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts.

415 U.S. at 57, 94 S.Ct. at 1024. This observation is as true of the ADEA as it is of Title VII, especially since the substantive prohibitions of that Act, as well as its deferral mechanisms, were patterned after those of Title VII. *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978).

In addition, if unreviewed state administrative findings of fact were given *res judicata* effect in a federal suit, the concurrent or subsequent EEOC investigation would be superfluous. It would also be anomalous to conclude that unreviewed state administrative determinations must be given preclusive effect by federal courts when the findings of the EEOC itself do not preclude *de novo* judicial review. *McDonnell Douglas*, 411 U.S. at 798–99, 93 S.Ct. at 1822.[10]

There are certain differences between the deferral mechanisms of Title VII and the ADEA which bear on the issue before us. Under Title VII, all proceedings at the federal level, both administrative and judicial, are deferred until 60 days after the state proceedings have been commenced. 42 U.S.C. § 2000e–5(c). The ADEA provides for more limited deferral: although one cannot institute a federal suit until 60 days after proceedings under state law have begun (unless earlier terminated), one

---

**9.** Duggan did not file a charge with the Illinois Department of Human Resources, which is the state agency charged with addressing claims of employment discrimination. The district court held that Duggan effectively instituted state proceedings by filing a charge with the EEOC because the EEOC automatically refers charges to the relevant state agency. *Duggan*, 40 FEP Cases at 1209.

**10.** Another factor counseling against the application of administrative *res judicata* is the inequity this would produce between plaintiffs in deferral and non-deferral states, i.e., those states that have not empowered an agency to resolve age discrimination complaints. Those plaintiffs who must submit their claims to a state agency before they can bring a federal suit would be denied a trial *de novo* if the state agency completed its factual determinations within 60 days. On the other hand, plaintiffs in non-deferral states are not hampered in their federal suit by the prior factual findings of a state agency.

can file charges with the EEOC without first filing with the state agency. 29 U.S.C. § 633(b).[11] The ADEA also provides that "upon commencement of action under this chapter such action shall supersede any State action," 29 U.S.C. § 633(a); Title VII does not contain a comparable provision.

Duggan and the EEOC argue that these differences in the deferral provisions suggest that Congress intended that state determinations with respect to age discrimination be afforded less deference than state agency discrimination findings on matters alleged in a Title VII suit. In this connection, in reviewing the construction given a statute by the agency charged with administering its provisions, a court should sustain the agency's interpretation if it is based on a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The EEOC's position on the issue here is that "judicially unreviewed findings of state age discrimination authorities, or of other state or local agencies, [do not have] a preclusive effect on ADEA claims." EEOC's Brief as *Amicus Curiae* at 2 n. 2.[12]

The differences (as well as the similarities) between the deferral mechanisms of Title VII and the ADEA provide support for the position that, if anything, less deference is due state proceedings under the ADEA than under Title VII. Thus, under section 633(a) of the ADEA, state proceedings which are ongoing at the time the federal procedure is begun can be stayed while the federal action proceeds. *See, e.g., Dunlop v. Pan American World Airways, Inc.,* 672 F.2d 1044, 1049 n. 7 (2d Cir.1982); *Shanahan v. WITI–TV, Inc.,* 565 F.Supp. 219, 224 (E.D.Wis.1982) (section 633(a) permits the staying of "action by a state agency or by a court reviewing the action of a state agency").

Section 633(b) thus effectively gives the EEOC concurrent jurisdiction with state agencies to investigate claims of age discrimination. This court itself has noted that the fact that the ADEA does not provide state agencies with any period of exclusive jurisdiction suggests that the "policy of deference to state authority ... is weaker than in Title VII." *Martinez v. United Automobile, Aerospace and Agricultural Implement Workers of America,* 772 F.2d 348, 351 (7th Cir.1985). The *Martinez* panel suggested several possible explanations for this relationship: (1) the ADEA was passed subsequent to Title VII, and section 633(b) might reflect "the decline in the ideology of 'state's rights' " in the intervening years; (2) the ADEA, which protects the rights of the aged, might not have been as controversial as Title VII, which was aimed at protecting the rights of racial minorities; or (3) this section might reflect the position that "older people should be entitled to faster procedures for vindicating claims of employment discrimination because they have fewer working years ahead of them than other people." *Id.* The first two suggested policies would obviously support a view that Congress intended that state administrative proceedings be given less deference in an ADEA suit than in a Title VII suit. On the other hand, as to the third policy, if Congress were simply concerned with the speed of the remedy, the legislature, by granting concurrent jurisdiction to the EEOC, might not have intended to suggest that the EEOC and federal courts need not defer to findings made after a *completed* state agency investigation. All of the explanations posited in *Martinez* seem plausible, and the ADEA's legislative history does not help us decide which policies actually lie behind section 633(b). The inferences previously discussed, which are drawn from the structure of the ADEA's deferral mechanism and its similarity to that of

---

11. Although not required by statute, the EEOC, as a matter of practice, does refer charges of age discrimination to the appropriate state agency. 29 C.F.R. § 1626.9 (1986).

12. The EEOC does accord substantial weight in its ADEA investigations to the findings of state agencies even though the EEOC's position is that it is not required to do so by law. *EEOC's Compliance Manual* (CCH) ¶ 285, § 5.5(a)(2) (May 1985).

Title VII, provide clearer support for the view that administrative *res judicata* does not apply in the context of age discrimination claims.

The strongest argument the school district can muster against inferring that Congress intended the ADEA to be treated the same as Title VII for the purpose of applying administrative *res judicata* is to note that in *Elliott* the Supreme Court relied in part on section 2000e–5(b), which provides that the EEOC, in investigating discrimination charges under Title VII, must give substantial weight to the findings of state and local authorities. The ADEA does not have a comparable provision. Section 2000e–5(b), however, is simply the most obvious piece of evidence that administrative *res judicata* does not operate in a Title VII suit. Thus, it is not surprising that the Court in *Elliott* heavily relied on this provision. The absence of a comparable section in the ADEA is certainly not fatal to Duggan. In fact, the legislative history of section 2000e–5(b) may be read to support Duggan. Section 2000e–5(b) was added as part of the 1972 amendments of Title VII to *increase* the EEOC's deference to state administrative proceedings. Prior to the addition of this section, the EEOC, far from according preclusive effect to factual determinations made by state administrative agencies, was giving scant deference to such findings. *Kremer*, 456 U.S. at 475–76, 102 S.Ct. at 1894.[13] Accordingly, it would be far-fetched to construe the *absence* of such a provision in the ADEA as indicating an intent of Congress to give preclusive effect to the factual findings by state or local agencies.[14]

IV.

 We therefore conclude that unreviewed factual findings of a state or local agency should not be given preclusive effect in a subsequent ADEA suit.

REVERSED AND REMANDED

---

**13.** After reviewing the legislative history of the 1972 amendments in *Kremer*, the Supreme Court concluded "[p]rior to the[se] ... amendments, the EEOC was free to ignore state administrative decisions." 456 U.S. at 475 n. 16, 102 S.Ct. at 1894 n. 16.

**14.** One final issue that deserves this court's attention is the apparently misleading use of a quotation by appellant's counsel. One of the arguments raised by the appellant that we have not addressed is Duggan's contention that he did not have a full and fair opportunity to litigate his discrimination claims before the hearing officer. To support this position, his counsel selectively quoted from the transcript of the administrative hearing to suggest that the hearing officer resisted Duggan's attempt to introduce evidence supporting his charge of discrimination. Appellant's Reply Brief at 11. The complete passage, however, reveals that the hearing officer in fact ruled in favor of Duggan on this point.

Doctoring quotations is a serious ethical violation and will not be tolerated by this court. Rule 3.3 *Annotated Model Rules of Professional Conduct* (1984). During oral argument, counsel's attention was drawn to this breach of her duty to this court; repetition of conduct of this sort may lead to more severe sanctions.

In a petition to modify opinion, appellant's counsel asserts that the quotation in question was not intended to be misleading and apologizes for the "misunderstanding."