Paul J. **CORRENTE**, Plaintiff,

v.

**ST. JOSEPH'S HOSPITAL AND HEALTH CENTER, Thomas Shatraw, and James Dishaw, Defendants.**

No. 89–CV–890.

United States District Court,
N.D. New York.

Feb. 15, 1990.

Seidenberg, Strunk, & Goldenberg, Syracuse, N.Y. (Faith A. Seidenberg, of counsel), for plaintiff.

Costello, Cooney & Fearon, Syracuse, N.Y. (Frances A. Ciardullo, of counsel), for defendants.

## MEMORANDUM–DECISION & ORDER

MUNSON, District Judge.

Plaintiff commenced this action on July 18, 1989 contending that he was unlawfully discharged by St. Joseph's Hospital and Health Center (St. Joseph's) in violation of the first and fourteenth amendments to the U.S. Constitution, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and Section 296 of the New York Executive Law. Defendants have moved to dismiss plaintiff's entire complaint under Rule 56. The court heard oral argument on November 3, 1989 in Syracuse, New York and reserved decision on defendants' motion.

## BACKGROUND

Plaintiff was employed by St. Joseph's as an operating engineer from 1985 until his termination in January of 1988 at which time he was 59 years old. The incident that gave rise to plaintiff's termination occurred in December of 1987 when plaintiff was assigned to replace an ethylene oxide

tank.[1] Employees assigned to perform this function are required to wear a monitor badge which is designed to measure an individual's exposure to ethylene oxide. After determining that there was a leak, plaintiff removed the badge and placed it near the leak. He then replaced the badge on his shirt and made note of the leak in his logbook.[2] According to St. Joseph's, plaintiff did not record in his log book, however, the manner in which he exposed the badge, nor did he immediately inform his supervisors of this action. St. Joseph's contends that it was only after the test results of the badge were determined to be within OSHA's limits for short term exposure that plaintiff informed St. Joseph's of his conduct. St. Joseph's believed that plaintiff's purpose in placing the badge near the leak was to have it appear that he had inhaled a large dose of ethylene oxide so that he could assert a fraudulent injury claim. St. Joseph's terminated plaintiff asserting as a basis this claimed safety violation. (Defendants' Exhibit B). Plaintiff contends that the actual reason why St. Joseph's terminated his employment was due to his age. In this regard, plaintiff asserts that a co-worker under the age of 30 entered the tank room with him without even wearing a badge and was neither disciplined nor discharged. (Complaint at ¶ 22).

On February 19, 1988, plaintiff, proceeding *pro se*, filed a complaint with the New York State Division of Human Rights (the Division) contending that St. Joseph's termination of his employment constituted an unlawful discriminatory practice on the basis of age in violation of Article 15 of the New York Executive Law. The matter before the Division was still pending at the time plaintiff, through counsel, commenced this action by filing a complaint on July 18, 1989.

Defendants initially moved for partial summary judgment on August 11, 1989 seeking dismissal of plaintiff's claim under the first and fourteenth amendments, plaintiff's state law claim, and plaintiff's punitive and compensatory damage claims under the ADEA. With respect to plaintiff's fourteenth amendment claim, defendants argued that summary judgment was warranted because there was no state action. Defendants also contended that there was no subject matter jurisdiction for plaintiff's state law claim because under section 297(9) of the New York Executive Law once plaintiff filed a charge of age discrimination under State law with the Division, no subsequent court action involving the state claim was permissible. Finally, St. Joseph's asserted that plaintiff's requested relief for punitive and compensatory damages was not permitted under the ADEA.

On August 14, 1989, plaintiff's attorney made a telephone call to the Division seeking a final decision. Four days later, the Division issued a decision in which it concluded that there was no probable cause to believe that St. Joseph's engaged in unlawful age discrimination.[3] After the Division's determination, defendants moved to dismiss plaintiff's entire complaint on the grounds that under the Supreme Court's decision in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Division's determination has preclusive effect and therefore acts to bar plaintiff's ADEA action.[4]

---

1. Ethylene oxide is used to sterilize surgical instruments.

2. It is not clear from the record exactly where plaintiff positioned the badge or the length of time that the badge was off his shirt.

3. The Division made the following findings: The evidence shows the complainant violated a safety regulation under suspicious circumstances. The complainant was terminated from employment for this episode. Evidence shows the complainant received the same training as other employees; age was not a factor. The respondent employs older persons, approximately 30% of the department is 50 years of age or older. It is not the role of this Division of Human Rights to question the management styles of the respondent and to ascertain if the situation could have been handled differently. The Division must concentrate its investigation on the charge of age discrimination and this charge is not substantiated.
Defendant's Exhibit D.

4. In *Elliott* the Supreme Court addressed the issue of whether an unreviewed determination of a state agency has a preclusive effect in subsequent Title VII and § 1983 actions. With

## DISCUSSION

As noted, this action was commenced on July 18, 1989. The Division did not make its determination until August 18, 1989. A preliminary question thus presents itself: Does the Division's determination have any binding effect on this court given that it was rendered subsequent to the commencement of this action?

█ Section 633(a) of the ADEA provides that "[n]othing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age *except* that upon commencement of an action under this chapter such action *shall supersede any State action.*" (emphasis added). The legislative history to section 633(a) indicates that "commencement of an action under this act *shall be a stay* on any State action previously commenced." H.R. No. 805, 90th Cong., 1st Session, *reprinted in,* 1967 U.S.Code Cong. & Ad.News 2213, 2219, 2224 (emphasis added); *see also Dunlop v. Pan American World Airways, Inc.,* 672 F.2d 1044, 1049 n. 7 (2d Cir.1982). Given this mandatory language, it would appear that Congress intended that upon the filing of a federal ADEA action the State proceeding is automatically stayed without any need for the plaintiff to seek an order from the federal court directing the state agency to suspend any further consideration of the state age discrimination charge.

█ Section 633(b) provides in relevant part as follows:

In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated....

Thus, if a state has enacted laws prohibiting age discrimination in employment and has established an agency authorized to provide relief from such discrimination, that state is deemed a "deferral state" and under section 633(b) an aggrieved party *must* commence a proceeding before such agency sixty days prior to initiating a federal action. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072-73, 60 L.Ed.2d 609 (1979) (holding that "resort to administrative remedies in deferral States by individual claimants is mandatory, not optional"). If the state agency resolves the age discrimination claim to the satisfaction of the aggrieved party, there is, of course, no need to resort to the federal courts. If, however, the state agency has not rendered a final decision within sixty days from the commencement of that proceeding, under section 633(b) the aggrieved party may then institute a federal action which under section 633(a) acts to stay any further consideration by the state agency until termination of the federal action.

In the present case, plaintiff filed his original charge of age discrimination with the Division[5] in February of 1988. The

regard to the Title VII claim, the Court concluded that the state agency's determination had no preclusive effect. The Court arrived at this conclusion by examining section 2000e–5(b) of Title VII which provides that the Equal Employment Opportunity Commission must give "substantial weight to the final findings and orders made by State or local authorities in proceedings commenced under State or local law." The Court concluded that preclusion would be inconsistent with Title VII's mandate that the EEOC give substantial weight to the agency's findings. The Court thus concluded that the plaintiff was entitled to a trial *de novo* on his Title VII claim.

The Court held, however, that the agency's findings were entitled to preclusive effect on

plaintiff's § 1983 claim. The Court found no indication in the text of the statute or in its legislative history that Congress intended to create an exception to common law rules of preclusion. In the absence of such a Congressional intent, expressed or implied, the Court re-affirmed what it believed to be the "sound policy [of] apply[ing] principles of preclusion to the factfinding of administrative bodies acting in a judicial capacity." *Id.,* 478 U.S. at 797, 106 S.Ct. at 3225.

**5.** Under the New York Executive Law §§ 295–296, the Division is authorized to grant relief to individuals discriminated against in their employment on the basis of age.

extensive record compiled by the Division and plaintiff's ongoing correspondence with its staff, belies plaintiff's attorney's claim that the filing with the Division was merely *pro forma,* that is, merely for the purpose of satisfying the procedural requirements of section 633(b) of the ADEA. On the contrary, the Division's record reveals plaintiff's genuine desire to obtain relief from the agency regarding his claim of age discrimination. As stated earlier, plaintiff did not commence a federal action immediately after the sixty day period expired as permitted under section 633(b), but rather continued to seek redress from the state administrative machinery. Indeed, plaintiff commenced this federal action approximately a year and a half after he filed charges of age discrimination with the Division. Upon this filing, the proceeding before the Division was automatically stayed under section 633(a). However, as noted, on August 14, 1989 plaintiff's attorney telephoned the Division and asked it to proceed with a final determination. A question thus arises whether, as argued by defendants, this course of action as a matter of law waived the section 633(a) stay.

■ Plaintiff states in his memorandum of law that his counsel requested a final determination from the Division "in order to clear up the record." (Plaintiff's Memorandum of Law, Docket (Doc.) 10, at 8). Exactly why plaintiff's counsel felt compelled to do so is not at all clear. As indicated in the above discussion of the relationship between section 633(a) and 633(b), such action was not a prerequisite to pursuing plaintiff's federal remedies. One possible interpretation for counsel's course of action is a misunderstanding of the requirements for commencing a federal ADEA action. A more plausible interpretation, however, is suggested by defendants. Defendants claim that plaintiff requested that the Division make a final ruling in response to its summary judgment motion filed with this court on August 11, 1989. One of the arguments advanced by defendants in that motion was that plain-

tiff's pendent state law claim must be dismissed under Section 297(9) of the New York Executive Law because at the time there was a pending state administrative proceeding involving that claim. Section 297(9) provides in relevant part that

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, *unless* such person had filed a complaint [with the division] or with any local commission on human rights ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.

(emphasis added). This section has been interpreted to be an election of remedies provision. Therefore, if an aggrieved party commences an action before the Division that is not subsequently dismissed for administrative convenience he may not later initiate a state or federal court action involving the state discrimination claim. *See, e.g., Keeley v. Citibank,* 711 F.Supp. 157, 161 (S.D.N.Y.1989); *Jiminez v. Southridge Co-op, Section I, Inc.,* 626 F.Supp. 732, 735 (E.D.N.Y.1985); *James v. Coughlin,* 124 A.D.2d 728, 508 N.Y.S.2d 231 (2d Dep't 1986), *appeal denied,* 69 N.Y.2d 609, 516 N.Y.S.2d 1025, 509 N.E.2d 360 (1987). Thus, it would appear that counsel's motivation may have been to circumvent defendants' motion to dismiss the pendent state law claim.[6]

■ Defendants argue that by taking such action plaintiff thereby waived the stay that otherwise would have been mandated by section 633(a). Specifically, defendants argue that since section 633(a) by its very terms does not affect the ultimate jurisdiction of the state agency, the statutory stay is simply a procedural limitation and, therefore, "subject to equitable doctrines such as waiver, estoppel and eq-

---

**6.** If this was in fact counsel's motivation it was misguided since, as noted above in the text, under section 297(9) once a state proceeding is commenced the state law discrimination claim can not be litigated in another forum even if the agency has issued a final determination.

uitable tolling." (Defendants' Reply Memorandum of Law, Doc. 11, at 3).

Implicit in defendants' argument, of course, is that the statutory stay conferred a right upon plaintiff which could be waived by his actions. However, simply characterizing the stay as a "procedural," rather than a "jurisdictional," limitation does not answer the question raised here. In order to adequately resolve the question of whether the stay can be waived it is essential to look to the purpose of the stay. Unfortunately, the text of the statute and its scant legislative history provide little direct insight into the stay's purpose. Arguably, the purpose of the stay is to restore a plaintiff's choice of forum which is limited by section 633(b)'s requirement that a litigant initially resort to state remedies before commencing a federal action. This purpose would support the argument that the stay could be waived by a plaintiff's conduct indicating a desire to continue with his state remedies. It could be argued, however, that the purpose of the stay is not primarily to benefit an ADEA plaintiff but to conserve judicial resources by preventing two ongoing proceedings in which the same issues are being litigated.[7] Such a purpose obviously would militate against a plaintiff's waiver of the stay.

Although there is little direct evidence indicating that the stay was enacted as a judicial economy device, it would seem that the title of section 633, namely, "Federal–State relationship," tilts the balance in favor of such an interpretation and therefore against a waiver. The section's title evinces a conscious intent on the part of Congress to define the proper relationship between the states and the federal judiciary in resolving age discrimination in employment disputes. The balance struck in section 633(a), as discussed above, is that the commencement of a federal action stays all state proceedings while the federal action is ongoing. It would be inconsistent with Congress' apparent purpose in creating the statutory stay to permit an individual litigant to circumvent the federalism balance created by section 633. Therefore, the court concludes that the Division exceeded its authority when it proceeded to make a final ruling on plaintiff's charge of age discrimination after this federal action was initiated even though it was plaintiff who requested such a ruling. The court holds that even if unreviewed determinations of state agencies do as a general rule have preclusive effect in subsequent ADEA cases,[8] the Division's finding of no probable cause is not entitled to preclusive effect in this case since it was issued in violation of the section 633 stay. Accordingly, any future examination of the merits of plaintiff's ADEA claim which this court undertakes will be *de novo*.

Defendants also move to dismiss that part of plaintiff's complaint which seeks punitive and compensatory damages. Paragraph 32 of the complaint requests that the court issue an order "[g]ranting

---

7. A corollary to this judicial economy argument is that by preventing any contemporaneous state proceedings the stay provision may have been enacted to avoid the preclusive effect that the state agency's determination would otherwise have if rendered prior to the termination of the federal action. The Seventh Circuit has concluded, however, that the stay provision evinces a congressional intent to give *less* deference to state agency findings. *See Duggan v. Board of Education of East Chicago Heights,* 818 F.2d 1291, 1296 (7th Cir.1987).

8. Although the Second Circuit has not yet ruled on this issue, this court previously ruled in an unreported decision, *Westfall v. City of Cohoes,* 86–CV–817, slip op. at 8, n. 6, 1988 WL 79202 (N.D.N.Y. April 6, 1988), that was subsequently vacated on other grounds, *Westfall v. City of Cohoes,* 86–CV–817, slip op. (N.D.N.Y. July 8, 1988), that unreviewed decisions of state administrative agencies do not have preclusive effect in subsequent ADEA cases. Two other district courts in this circuit have addressed the issue and reached different conclusions. *Compare Ibrahim v. New York State Department of Health,* 692 F.Supp. 1471 (E.D.N.Y.1988) (holding that administrative preclusion was not available in ADEA cases), with *Solimino v. Astoria Federal Savings & Loan Association,* 715 F.Supp. 42, 47 (E.D.N.Y.1989) (holding that state agency decisions are entitled to preclusive effect in subsequent ADEA cases); *see also Stillians v. State of Iowa,* 843 F.2d 276, 281 (8th Cir.1988) (holding that administrative preclusion is applicable in ADEA cases); *Duggan v. Board of Education,* 818 F.2d 1291, 1294 (7th Cir.1987) (holding that administrative preclusion is inapplicable in ADEA cases).

plaintiff punitive damages for the willful violation of plaintiff's rights." In addition, Paragraph 34 seeks an order "[g]ranting the plaintiff such other and further relief as may be necessary to put the plaintiff in the position he would have been in but for the acts of the defendants, and such other and further relief as may be appropriate under the circumstances." As defendants correctly note, claims for punitive and compensatory damages are not permitted in ADEA cases. *Johnson v. Al Tech Specialties*, 731 F.2d 143, 147 (2d Cir.1984); *Wanamaker v. Columbian Rope Co.*, 713 F.Supp. 533, 547 (N.D.N.Y.1989). Plaintiff does not appear to dispute that such damages are unavailable. Rather plaintiff argues that with respect to its punitive damage claim he is actually seeking liquidated damages which are punitive in nature and expressly permitted under the ADEA for willful violations. 29 U.S.C. § 626(b). Although plaintiff's complaint is not artfully drafted in this regard, to the extent that paragraph 32 is asserting a claim only for liquidated damages the court will not dismiss this claim.

■■■■ However, with regard to the first clause of paragraph 34 of the complaint, it appears from plaintiff's memorandum of law that plaintiff is seeking the same types of damages that he requests in paragraph 31, namely, reinstatement, backpay, fringe benefits, front pay, and prejudgment interest. The first clause of paragraph 34 is therefore redundant of paragraph 31 and accordingly is dismissed. The court does not dismiss, however, the second clause of paragraph 34 which seeks "such other and further relief as may be appropriate under the circumstances."

■■■ Defendants also seek to dismiss plaintiff's claim under the first and fourteenth amendments. Plaintiff argues that St. Joseph's termination of his employment on the basis of alleged violations of OSHA was a pretext to deprive plaintiff of his first amendment free speech rights. It is clear, however, that the fourteenth amendment acts only to proscribe unlawful discriminatory practices of the state. *See National Collegiate Athletic Association v.*

*Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988) ("Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be."). Discriminatory conduct on the part of private individuals or organizations, which can not be attributed to the state, simply does not rise to the level of a constitutional violation. *Id.*

■■■■ Plaintiff asserts two arguments in support of his position that St. Joseph's is a state actor for fourteenth amendment purposes: (1) St. Joseph's receives federal and state funds and (2) St. Joseph's is subject to federal OSHA regulations. Both of these arguments, however, are unavailing. As the Supreme Court stated in *Blum v. Yaretsky*, 457 U.S. 991, 1011, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982), "[t]hat programs undertaken by the state result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the state is responsible for decisions made by the entity in the course of its business." *See also Adams v. Vandemark*, 855 F.2d 312, 316 (6th Cir. 1988), *cert. denied*, ── U.S. ──, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989) (holding that neither public funding nor governmental regulation "without more, is sufficient to make a private entity's decision to discharge an employee attributable to the state."). Thus, the mere fact that an otherwise private institution receives public funding does not make it a state actor under the fourteenth amendment. *See San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 107 S.Ct. 2971, 2985, 97 L.Ed.2d 427 (1987); *see also Rendell–Baker v. Kohn*, 457 U.S. 830, 840, 102 S.Ct. 2764, 2770–71, 73 L.Ed.2d 418 (1982) (holding that "school's receipt of public funds does not make the discharge decisions acts of the state."). Moreover, extensive state or federal regulation of a private institution does not in itself create state action. *See*

San Francisco Arts & Athletics, Inc., 107 S.Ct. at 2985; Rendell–Baker, 457 U.S. at 840, 102 S.Ct. at 2770–71; see also Schlein v. Milford Hospital, Inc., 561 F.2d 427, 428 (2d Cir.1977); Logan v. St. Luke's–Roosevelt Hospital Center, 636 F.Supp. 226, 237 (S.D.N.Y.), aff'd, 805 F.2d 391 (2d Cir.1986); cf. Thomas v. Beth Israel Hospital, Inc., 710 F.Supp. 935, 940 (S.D.N.Y. 1989) (holding that private hospital did not act under color of state law for purposes of section 1983 even though it was complying with state laws regarding the reporting of child abuse). In this regard, although defendants' decision to terminate plaintiff seems to have been based upon plaintiff's alleged violation of OSHA safety regulations, it does not appear that OSHA regulations themselves mandated plaintiff's dismissal. Rather, termination of plaintiff appears to have been solely a discretionary personnel decision of St. Joseph's. Accordingly, plaintiff's contention that OSHA regulations compelled or influenced St. Joseph's ultimate decision to terminate plaintiff is without merit. See Rendell–Baker, 457 U.S. at 841, 102 S.Ct. at 2771. Therefore, since plaintiff has not provided this court with any evidence suggesting that St. Joseph's is a state actor for fourteenth amendment purposes, other than the fact that it is subject to government regulation and receives public funding, this court holds that St. Joseph's is not a state actor under the fourteenth amendment and accordingly defendants' motion to dismiss plaintiff's claim under the first and fourteenth amendment is also granted.

Finally, plaintiff's pendent state law claim under section 296 of the New York Executive Law must be dismissed since as discussed more fully above, see supra at 498, when plaintiff elected to seek redress from the Division he was, as a result of section 297(9), precluded from litigating his state law claims in any court.

In sum, defendants' motion to dismiss the entire complaint is denied. Defendants' motion to dismiss plaintiff's punitive and compensatory damage claims is granted in part and the court dismisses that part of paragraph 34 of the complaint which seeks compensatory damages under the ADEA; the motion is denied to the extent that plaintiff asserts a claim for liquidated damages under the ADEA in paragraph 31 of the complaint. Finally, defendants' motion to dismiss plaintiff's first and fourteenth amendment claim and pendent state law claim is granted.

It is So Ordered.