**Angelo J. SOLIMINO,**
**Plaintiff–Appellant,**

v.

**ASTORIA FEDERAL SAVINGS AND**
**LOAN ASSOCIATION,**
**Defendant–Appellee.**

**No. 441, Docket 89–7639.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1989.

Decided April 12, 1990.

Leonard N. Flamm, New York City (Hockert & Flamm, New York City, Joseph J. Gentile, Long Island City, N.Y., of counsel), for plaintiff-appellant.

Anthony H. Atlas, New York City (Paul J. Siegel, Sara J. Herrin, and Roger S. Kaplan, Jackson, Lewis, Schnitzler & Krupman, New York City, of counsel), for defendant-appellee.

Lamont N. White, Atty., U.S. E.E.O.C., Washington, D.C. (Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, Washington, D.C., of counsel), for amicus curiae, U.S. E.E.O.C.

Robert L. Liebross, Washington, D.C. (Steven S. Zaleznick, Cathy Ventrell–Monsees, Washington, D.C., of counsel), filed a brief for amicus curiae, American Ass'n of Retired Persons.

Before LUMBARD, FEINBERG and MESKILL, Circuit Judges.

LUMBARD, Circuit Judge:

Angelo J. Solimino appeals from a summary judgment of the District Court for the Eastern District of New York, Glasser, J., which dismissed his complaint against Astoria Federal Savings and Loan Association under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"). The district court held that Solimino was estopped from proving his case by a judicially unreviewed finding of no discrimination made by the New York State Division of Human Rights ("DHR"). Because Congress intended that federal courts give no preclusive effect in ADEA suits to the judicially unreviewed fact-finding of a state agency, we reverse.

Solimino was employed by Astoria from October 4, 1945 until March 5, 1982, when, at age 63, Astoria terminated his employment as vice-president of the Mortgage Origination Department.

On March 18, 1982, Solimino filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC referred the matter to the DHR pursuant to a work-sharing agreement between the two agencies. Treating the case as a potential violation of both the ADEA and New York State Human Rights Law, the DHR assigned it to a human rights specialist, who issued an investigative report on October 5, 1982 and on November 29, 1982 conducted a hearing, attended by all parties and counsel, at which the witnesses of each party gave sworn testimony. On January 25, 1983, the DHR dismissed the complaint, finding that no probable cause existed to believe that the alleged discrimination had occurred. The State Human Rights Appeal Board affirmed on May 30, 1984, after giving Solimino the opportunity to submit a brief and to present oral argument. No court ever reviewed the DHR's findings.

While the administrative appeal was pending, Solimino commenced an action on July 29, 1983 in New York State Supreme Court, New York County, against certain Astoria and DHR employees and Astoria's law firm for wrongful termination, prima facie tort, perjury and conspiracy. This suit did not seek judicial review of the DHR's findings as to Solimino's age discrimination claim. The court dismissed the complaint against some defendants on April 16, 1984 and as to the remaining defendants on May 10, 1984. The Appellate Division affirmed. *Solimino v. Drewitz,* 111 A.D.2d 602, 489 N.Y.S.2d 439 (1st Dep't 1985).

On February 21, 1985, Solimino commenced this action against Astoria, alleging that, because of his age, Astoria denied him promotions and raises and terminated his employment in violation of the ADEA. On February 23, 1989, Astoria moved for summary judgment on the grounds that the suit was barred by the statute of limitations and that the DHR's prior unreviewed finding that Solimino's treatment and termination were not due to age discrimination precluded Solimino's federal suit.

In a Memorandum and Order dated May 31, 1989, Judge Glasser granted Astoria's motion on the administrative estoppel ground while denying it on the statute of limitations ground. He held that Congress intended preclusion in federal ADEA suits and that the DHR's finding of no age discrimination was sufficient under the due process clause of the fourteenth amendment to justify preclusion of Solimino's federal suit. *Angelo J. Solimino v. Astoria Federal Savings and Loan Association,* 715 F.Supp. 42, 51 (E.D.N.Y.1989). Solimino appeals. The EEOC, which administers the ADEA, has filed a brief *amicus* supporting Solimino's appeal.

In *University of Tennessee v. Elliott,* 478 U.S. 788, 795–96, 106 S.Ct. 3220, 3224, 92 L.Ed.2d 635 (1986), the Supreme Court held, with respect to suits under Title VII, which prohibits employment discrimination on the basis of race, color, sex, religion or national origin, that Congress intended to give no preclusive effect to judicially unreviewed findings of a state agency. In contrast, the Court held that Congress did intend to give preclusive effect to such findings in suits under 42 U.S.C. § 1983, which prohibits deprivation of civil rights by state officials acting under color of state law. *Id.* at 796–99, 106 S.Ct. at 3224–26. Since *Elliott,* two circuit courts have differed as to whether, in enacting the ADEA, Congress intended to give preclusive effect to findings of a state agency which have not been judicially reviewed. *See Duggan v. Board of Education of East Chicago Heights,* 818 F.2d 1291 (7th Cir.1987) (finding for grievant on issue at bar); *Stillians v. State of Iowa,* 843 F.2d 276 (8th Cir.1988) (*contra*) (one judge dissenting).[1]

We are persuaded from our review of the ADEA that Congress intended that a finding of no discrimination by a state agency which has not been judicially reviewed should have no preclusive effect in federal court.

First, Section 14(b) of the ADEA, 29 U.S.C. § 633(b), provides that, when alleged age discrimination occurs in a state which has an age discrimination law, the plaintiff may not sue under the ADEA "before the expiration of sixty days after proceedings have been commenced under the State law, *unless such proceedings have been earlier terminated*" (emphasis added). The natural reading of the emphasized clause is that, if the state proceedings have been earlier terminated, the plaintiff may bring suit in federal court—assuming there has been no state court review of the agency findings—before the sixty-day period ends. We therefore think that Congress would not have allowed plaintiffs to bring suit under the ADEA following termination of state administrative proceedings if it had intended a judicially unreviewed fact-find-

---

1. There is a conflict of opinion within the Eastern District. Before Judge Glasser in this case held that Congress intended preclusion, Judge Dearie held the opposite in *Ibrahim v. New York State Department of Health,* 692 F.Supp. 1471, 1473–74 (E.D.N.Y.1988) (citing *Duggan* and rejecting *Stillians*).

Other courts have faced this question of congressional intent without fully resolving it. In *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1283 (9th Cir.1986), the Ninth Circuit held preclusion permissible if the agency acted in a judicial capacity and gave grievants an adequate opportunity to litigate; the court ignored the issue of Congressional intent, al-

though citing *Elliott,* and ultimately ruled that the grievants did not have an adequate opportunity to litigate. In *Delgado v. Lockheed–Georgia Co.,* 815 F.2d 641, 646–47 (11th Cir.1987), the Eleventh Circuit held that preclusion would not apply because the grievants did not have an adequate opportunity to litigate their claims in the state agency and stated in dictum that it was disinclined to believe Congress ever intended preclusion in federal ADEA suits. *See also Frank v. Capital Cities Communications, Inc.,* 689 F.Supp. 334, 337–38 (S.D.N.Y.1988) (declining to reach issue of Congressional intent to give preclusive effect when grievant did not litigate same issues and claims in state agency).

ing in such proceedings to have preclusive effect in the federal suit. Furthermore, under the ADEA, a person may file a complaint with both a state agency and the EEOC, and in such a situation, both agencies undertake their own inquiry. *See* 29 U.S.C. §§ 626(d) and 633(b). If Congress had intended preclusion from judicially unreviewed state agency findings, "the concurrent or subsequent EEOC investigation would be superfluous." *Duggan,* 818 F.2d at 1295.

Second, Section 14(a) of the ADEA, 29 U.S.C. § 633(a), provides:

Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to [age discrimination] except that upon commencement of action under this chapter such action *shall supersede any State action.*

(Emphasis added.) Congress clearly required that "any" state action, which necessarily includes prior agency fact-finding, be superseded for the purposes of the federal suit by federal proceedings and federal fact-finding.[2] Indeed, Congress enacted the sixty-day deferral mechanism "to give state agencies a limited opportunity to resolve problems of employment discrimination," *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (ADEA grievant may not sue in federal court until he commences state agency proceedings, but the dismissal of the complaint as untimely by the agency does not preclude federal suit), and "to screen from the federal courts those discrimination complaints that might be settled *to the satisfaction of the grievant* in state proceedings," *id.* at 756, 99 S.Ct. at 2071 (emphasis added). There would be little reason to give a grievant a second bite at the apple if prior judicially unreviewed fact-finding, adverse to the griev-

ant, were intended to bar a federal court from an independent determination of the matter.

Third, the legislative history clearly indicates that Congress enacted the ADEA because some state age discrimination laws were ineffective or inadequately enforced. *See* 113 Cong.Rec. 31254 (1967) (remarks of Sen. Javits); *The Older American Worker: Age Discrimination in Employment,* Report of the Secretary of Labor to the Congress Under Section 715 of the Civil Rights Act of 1964, at 10, *reprinted in* Legislative History of the Age Discrimination in Employment Act of 1967, U.S. Equal Opportunity Employment Commission, at 27. Given this articulated dissatisfaction with some state remedies to redress age discrimination, we believe that Congress intended the federal courts to give no preclusive effect to the judicially unreviewed fact-finding of a state administrative agency.

Fourth, in Title VII cases, the Supreme Court has stated that decisions of the EEOC do not preclude *de novo* fact-finding by a federal court and that Congress could not have intended the federal courts to be bound by the fact-finding of state administrative agencies when they are not bound by findings of the EEOC. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 470 n. 7, 102 S.Ct. 1883, 1891 n. 7, 72 L.Ed.2d 262 (1982) (Full Faith and Credit Statute bars federal courts from relitigating state agency's finding, affirmed by state court, of no discrimination under Title VII). As the Seventh Circuit stated, "It would ... be anomalous to conclude that unreviewed state administrative determinations must be given preclusive effect by federal courts when the findings of the EEOC itself do not preclude *de novo* judicial review." *Duggan,* 818 F.2d at 1295 (citing *McDonnell Douglas Corp. v.*

---

2. In *Dunlop v. Pan American World Airways, Inc.,* 672 F.2d 1044, 1049 n. 7 (2d Cir.1982), we determined that the automatic supersedure provision "stayed" state age-discrimination proceedings in the sense that it neither extinguished state claims nor cancelled state proceedings. There, grievants sought to continue pursuing their age discrimination claims in a state agency after federal proceedings terminated with a

court-approved stipulation between the Secretary of Labor, who then enforced the ADEA, and the employer Pan American. The grievants were not satisfied with the stipulation obtained by the Secretary on their behalf. We did not have occasion to consider whether state agency findings should have preclusive effect in the federal suit.

*Green,* 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (recognizing private employee's right to trial *de novo* under Title VII, whether EEOC finds no discrimination or fails to make any finding whatever)). *See also Alexander v. Gardner–Denver,* 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974) ("Courts retain [their] broad remedial powers [under Title VII] despite a[n EEOC] finding of no reasonable cause to believe that the Act has been violated.") (citing *McDonnell Douglas* ). Moreover, according to the Supreme Court, "it is clear that unreviewed administrative determinations by state agencies ... should not preclude [*de novo* federal court] review even if such a decision were to be afforded preclusive effect in a State's own courts." *Kremer,* 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7 (citing, *inter alia, Voutsis v. Union Carbide Corp.,* 452 F.2d 889 (2d Cir.1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972)).

These principles, developed in Title VII cases, apply as well to ADEA cases. We recently recognized this in *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir.1989):

> Our interpretations of the ADEA rely heavily on decisions arising under Title VII ... "for the substantive provisions of the ADEA 'were derived *in haec verba* from Title VII.' " *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 [105 S.Ct. 613, 621, 83 L.Ed.2d 523] (1985) (quoting *Lorillard v. Pons,* 434 U.S. 575, 584 [98 S.Ct. 866, 872, 55 L.Ed.2d 40] (1978)).

Astoria asserts, however, that the procedural and remedial provisions of the ADEA derive from the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, rather than from Title VII, *see Lorillard,* 434 U.S. at 584–85, 98 S.Ct. at 872, and that preclusion is either a procedural or a remedial issue. We are not persuaded. Some of the ADEA's procedures most relevant to this case were not adapted from the FLSA. The ADEA's deferral mechanism, obviously procedural, comes from Title VII, not from the FLSA. *Oscar Mayer,* 441 U.S. at 755, 99 S.Ct. at 2071. The ADEA's provision for automatic superseding of state agency action, also obviously procedural, derives from neither Title VII, *id.* at 757, 99 S.Ct. at 2072, nor the FLSA. In any event, assuming *arguendo* that we should look to the FLSA instead of Title VII for guidance as to the preclusion issue in this ADEA suit, Astoria fails to cite any part of the FLSA or its interpretive caselaw that indicates Congress intended in the FLSA to give preclusive effect to the judicially unreviewed fact-finding of a state administrative agency.[3]

Fifth, we do not believe that Congress could have intended that a grievant who is obligated to file a complaint with the EEOC in order to preserve his right to sue under the ADEA, 29 U.S.C. § 626(d), and who has no control over the EEOC's decision to refer the case to the state agency should be bound by an adverse, judicially unreviewed decision of that agency without having had a chance to make his case in federal court.

Sixth, the ADEA contains numerous provisions indicating a congressional intent to allow ADEA grievants earlier and freer access to federal court than Congress has allowed Title VII grievants.[4] For example, the ADEA requires a grievant to wait only 60 days at most after the commencement

---

**3.** Such caselaw may not exist because the FLSA does not mandate recourse to state agencies. *See Holliday v. Ketchum, MacLeod & Grove, Inc.,* 584 F.2d 1221, 1227 (3d Cir.1978) (in banc); *see also Marshall v. Chamberlain Mfg. Corp.,* 601 F.2d 100 (3d Cir.1979). *Cf.* 29 U.S.C. § 211(b) (authorizing cooperation with state authorities).

**4.** The ADEA is more grievant-protective in other areas. The ADEA provides for liquidated damages that are punitive in nature, *Trans–World Airlines, Inc. v. Thurston, supra,* while Title VII does not, *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 2375 n. 4, 105 L.Ed.2d 132 (1989); *see also Great American Federal Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 392, 99 S.Ct. 2345, 2359, 60 L.Ed.2d 957 (1979) (White, J., dissenting). The ADEA also provides for jury trial. *Lorillard.* Title VII does not. *Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981). *See also Patterson,* 109 S.Ct. at 2391 (Brennan, J., dissenting). The ADEA is also more grievant-protective than is the FLSA. *See Dunlop,* 672 F.2d at 1053 n. 10.

of state proceedings before filing suit in federal court. 29 U.S.C. § 633(b). By contrast, Title VII requires the grievant to wait up to 60 days after commencing state proceedings before filing a charge with the EEOC, 42 U.S.C. § 2000e–5(c); *Duggan*, 818 F.2d at 1295, and thereafter to wait up to 180 days before commencing suit in federal court, 42 U.S.C. § 2000e–5(f)(1).[5] In addition, the ADEA does not give the state agency exclusive jurisdiction. *Oscar Mayer*, 441 U.S. at 757, 99 S.Ct. at 2072; *Duggan*, 818 F.2d at 1296. By contrast, Title VII gives the state agency an initial period of exclusive jurisdiction. 42 U.S.C. § 2000e–5(c). Since Congress clearly intended ADEA grievants to have earlier and freer access to federal court,[6] and since Congress did not intend Title VII suits to be precluded by prior agency fact-finding, we conclude that Congress intended that prior agency fact-finding which has not been judicially reviewed should not be accorded preclusive effect in ADEA suits. *See Duggan*, 818 F.2d at 1296–97.

These considerations are given added weight by the opinion of the EEOC expressed in its *amicus* brief. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *Duggan*, 818 F.2d at 1296.

The district court read *Elliott* to require preclusion in this case because the ADEA does not instruct the EEOC to give "sub-

stantial weight" to prior state agency decisions. According to the district court, the background rule, operative in the absence of the "substantial weight" provision, is that preclusion applies. However, as we read *Elliott*, there is no reason to think that the absence of the phrase "substantial weight" from the ADEA disposes of the preclusion issue.[7] In holding that judicially unreviewed state agency fact-finding could not preclude a Title VII suit in federal court, the *Elliott* Court mentioned the "substantial weight" provision as only one piece of evidence concerning congressional intent. Far from resting its conclusion on the phrase "substantial weight," the Court in *Elliott* also grounded its decision on *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (under Title VII, federal employees have same right to *de novo* federal trial following federal agency's finding of no discrimination as do private employees).

The "substantial weight" provision was added in the 1972 amendments to Title VII in order to increase, not decrease, the EEOC's deference to state agency fact-finding. *Kremer*, 456 U.S. at 474–75 and n. 16, 102 S.Ct. at 1893–94 and n. 16.[8] "Prior to the 1972 amendments, the EEOC was free to ignore state administrative decisions." *Id.; see also id.* 456 U.S. at 470–71 n. 8, 102 S.Ct. at 1891–92 n. 8.[9] In other words, the background rule with respect to

---

**5.** The grievant need not wait the full 60 days if the state proceedings are earlier terminated. 42 U.S.C. § 2000e–5(c). Nor need the grievant wait the full 180 days if the EEOC dismisses the charge before the 180-day period is over. 42 U.S.C. § 2000e–5(f)(1).

**6.** *See also Martinez v. United Automobile, Aerospace & Agricultural Implement Workers of America*, 772 F.2d 348, 351 (7th Cir.1985) ("The policy of deference to state authority ... is weaker [in the ADEA] than in Title VII...."), and *Delgado*, 815 F.2d at 646 (citing *Martinez*).

**7.** Although the presence of the provision is dispositive because logically incompatible with preclusion, other considerations may also justify the conclusion that Congress intended no preclusion, as our discussion above indicates.

**8.** The Seventh Circuit relied on this piece of legislative history in *Duggan*, 818 F.2d at 1297.

The district court found it of little value, and the Eighth Circuit in *Stillians* ignored it.

**9.** "Congress is presumed to be aware of an administrative ... interpretation of a statute *and to adopt that interpretation* when it re-enacts a statute without change...." *Lorillard*, 434 U.S. at 580–81, 98 S.Ct. at 869–70 (citations omitted) (emphasis added). In 1986, Congress amended numerous provisions of the ADEA but did not alter § 14, 29 U.S.C. § 633. *See* Age Discrimination in Employment Amendments of 1986, Pub.L. No. 99–592, 100 Stat. 3342. Prior to the 1986 amendments, the EEOC interpreted § 14 as it does today, giving substantial weight, at most, but not preclusive effect to unreviewed state agency findings. *See EEOC's Compliance Manual* (CCH) ¶ 285, § 5.5(a)(2) (May 1985), *cited in Duggan*, 818 F.2d at 1296 n. 12. Thus, Congress' actions have been consistent with the EEOC's view.

the ADEA, operative in the absence of the "substantial weight" provision, is that preclusion does *not* apply. Since the words "substantial weight" do not appear in the ADEA, the logical conclusion is that the EEOC and, by extension, the federal courts are still free to ignore judicially unreviewed findings of no age discrimination made by state agencies. Thus, the judicially unreviewed DHR findings should have no preclusive effect whatever in Solimino's federal suit.

Reversed and remanded for further proceedings.